GATE CITY BUILDING AND LOAN ASSOCIATION, *Appellant*,
v. NATIONAL BANK OF COMMERCE.

### Division One, December 22, 1894.

1. **Bank Check.** A bank check is a negotiable instrument.

2. **Building and Loan Association**: SECRETARY: MISAPPLICATION OF FUNDS: BANK. Where the secretary of a building and loan association, and who is the custodian of its securities and authorized to keep its accounts and to make its collections, deposits a check, payable to the order of the association, to the credit of his personal account, the bank receiving the deposit is not liable for his misapplication of the money, although the treasurer is the person authorized by its by-laws to receive the moneys of the association from the secretary and to pay the same out.

*Appeal from Jackson Circuit Court.*—HON. J. W. HENRY, Judge.

AFFIRMED.

*C. S. Owsley* and *Lathrop, Morrow, Fox & Moore* for appellant.

(1) If defendant claims any benefit from the fact that plaintiff's by-laws gave its secretary power to receive money, still the same by-laws required him to pay it to the treasurer. Defendant, however, can not claim the benefit of any by-law unless it shows that it had knowledge of such by-law, and relied thereon in its dealings with secretary Harris. This is not claimed, and the evidence is absolutely silent on any knowledge of defendant of plaintiff's by-laws. *Flint v. Pierce*, 99 Mass. 70. (2) If this be not the rule, but on the other hand, defendant could have the benefit of any actual authority, if it existed, still it must prove such actual authority. *Wilson v. Railroad*, 120 N. Y. 153. (3) A

person dealing with an officer of a corporation whose duties are regulated by the by-laws, is chargeable with notice of such officer's authority, and of the limitations and restrictions upon it contained in the by-laws. Officers of a corporation are special, not general, agents, and have no authority except within the limits prescribed by the constitution and by-laws. *Frink v. Roe*, 70 Cal. 297; *Rice v. Peninsular Club*, 4 Am. and Eng. Corp. Cases, 251; *Wild v. Bank*, 3 Mason, 505; *State v. Bank*, 6 Sm. & M. 218; *Risley v. Railroad*, 1 Hun, 202; *Earnest v. Nicholls*, L. R. 6 H. L. Cas. 419; *Smith v. Hull Glass Co.*, 11 C. B. 926; *Durand Organ, etc., Co. v. Bowman*, 44 Am. and Eng. Corp. Cas. 664; *Hotchin v. Kent*, 8 Mich. 529; *Adriance v. Roome*, 52 Barb. (N. Y.) 410; *Dabney v. Stevens*, 40 How. Pr. (N. Y.) 345. (4) It was defendant's duty to have inquired into the authority of defendant's secretary Harris. *Hurley v. Watson*, 36 N. W. Rep. 729; *Bodenham v. Hoskyns*, 2 De Gex. M. &. G. 905; *Dabney v. Stevens*, 40 How. Pr. 341; *Dabney v. Stevens*, 52 Barb. 399; *Fawcett v. New Haven Organ Co.*, 47 Conn. 226; *McCullough v. Moss*, 5 Denio, 575; *Robinson v. Anderson*, 106 Ind. (152) 156. (5) All presumption as to ownership in the check in question when presented for deposit at defendant bank was against ownership in Harris, and the bank should not have placed the proceeds to his credit. *Bank v. Hammett*, 50 N. Y. (158) 159; *Bodenham v. Hoskyns*, 2 De Gex. M. & G. 905.

*Elijah Robinson* for respondent.

(1) The demurrer to the evidence was properly sustained. (2) The indorsement of checks by one having no authority to indorse the same is a nullity. In contemplation of law such indorsement, unless sub-

sequently ratified, has no more validity than if it was a
rank forgery.    In such case the legal obligation resting
on the drawee is not discharged, but it will be liable for
the money, notwithstanding the prior payment.   Harris
was plaintiff's agent, with authority to collect the
money on all demands due it, and the defendant bank
was not required to see to the proper application of the
money by him collected.    The by-laws conferred
authority on Harris, the secretary, to indorse the check
and collect the money thereon, and it is entirely imma-
terial whether the plaintiff knew of the existence of the
by-law conferring this authority.    *Wilson v. Railroad*,
120 N. Y. 153;   *Cowing v. Altman*, 71 N. Y. 442;
*Williams v. Mitchell*, 17 Mass. 101.

BRACE, J.—This is an appeal from a judgment in
favor of the defendant in the Jackson county circuit
court.

The plaintiff is a building and loan association
organized under the laws of this state, of which, at the
time of the transaction in question, E. E. Richardson
was    president,   Benjamin   Holmes,   treasurer,   and
George L. Harris, secretary.   In June, 1887, the asso-
ciation made a loan to Richardson of $4,000 evidenced
by his bond, and secured by a deed of trust on some
property in Kansas City.   In June, 1888, Richardson
concluded to pay off this loan, and made an arrange-
ment with Judge Brumback for that purpose, who, on
the nineteenth of June, 1888, drew his own check of
that date for $3,676.74, the balance due thereon, "on
Armour Bros. Banking Company," payable to "Gate
City Building and Loan Association" and delivered
the same to the said Harris in payment thereof, who
indorsed said check "Gate City B. & L. Ass'n, by
George L. Harris, secretary;" and on the next day
presented the same to the defendant bank, in which

was then being kept an account in the name of said association as also an individual account in the name of said Harris, for deposit on his personal account. Thereupon the check was credited to Harris on his individual account and collected by the bank, through the clearing house, of Armour Bros. Banking Company, on the twenty-first of June, 1888. Afterward the proceeds thus placed to the credit of Harris on his personal account were checked out by him on his individual checks, for what purposes does not appear, except that on the same day of the deposit there was deposited to the credit of the association on its account the sum of $590.33, the exact amount of one of his checks on that day charged to him on his individual account.

On the same day the check was given by Brumback the following written statement was made upon the face of the bond of Richardson: "Received, June 19, 1888, payment in full by E. E. Richardson, per J. Brumback, $3,676.74.    Geo. L. Harris, Secretary." And the deed of trust was satisfied of record by a deed of quitclaim executed by the vice-president of the association in pursuance of a special order of the board of directors.

Harris, the secretary, was the active manager of the association, and, under its by-laws, the custodian of its bonds, notes, mortgages and other securities, the keeper of its accounts with its officers and members and those having dealings with the association, whose duty it was "to receive all moneys and pay the same over to the treasurer," and "at all meetings of the board of directors furnish a statement of the financial condition of the association, and give a detailed statement thereof at each annual meeting and make a semiannual report for publication in January and July of each year." The treasurer was the custodian of the money of the association, whose duty it was "to

receive from the secretary all money paid into the association," to "pay all orders issued by the board of directors, signed by the president and countersigned by the secretary," and to keep his accounts "open at all times to the inspection of the president and board of directors," and, when demanded by them, to give satisfactory proof that the money and other assets are actually in hand in accordance with his own books and those of the secretary." It was the duty of the board of directors to hold monthly meetings for the transaction of the business of the association, not otherwise provided for, on the first Monday evening of each month.

In the account of Holmes, the treasurer, kept by the secretary in the ledger of the association, appears the following entry: "October 1, 1888. Cash, E. E. Richardson, loan returned, thirty-seven hundred dollars."

The evidence further tends to prove that Harris made the deposits to the credit of the association's account in the bank; that he was the only one that came to the bank to attend to its business; that prior to this transaction Harris had been making deposits both on his own account and on the account of the association; that he was in the habit of depositing checks payable to the association indorsed as this one was, and no checks came to the bank indorsed in any other way; that he made other deposits to his own credit in the same way; that he "used very often to deposit the entire receipts to his own credit and then give the company a check to cover it, and deposit it to the credit of the association;" that no objection was ever made by any of the officers of the association to his mode of doing the business at the bank, and this check was not deposited otherwise than in the regular course of his business with the bank.

It further appears from the evidence that, in April or May, 1889, Harris absconded, and it was thereafter discovered by the association that there was a shortage in his accounts, and that the check in question had been deposited by him to the credit of his individual account.    In July thereafter a demand was made on the bank for the return of the money collected thereon, and on the twenty-eighth of September, 1889, this suit was instituted for its recovery, in the form of an action for money had and received to the use of the association.

At the close of all the evidence the court instructed the jury to find for the defendant; plaintiff thereupon took a nonsuit, and, the court refusing to set the same aside, the plaintiff appeals.

The law of the case seems to be within a narrow compass.  There is not a particle of evidence tending to prove that the bank did not act in perfect good faith in this transaction, in respect of which it occupied no fiduciary relation to plaintiff.   It does not appear from the evidence to what purpose the proceeds of the check were ultimately applied by Harris—it may have been to his own or to those of the association—nor is this a matter of any importance upon the present issue.    The bank was not responsible for the proper application of those proceeds by him.   R. S. 1889, sec. 8691.   The check was a negotiable instrument.    *Famous, etc., Co. v. Crosswhite*, 124 Mo. 34.    The credit given to the account of Harris was the same as if the money had been paid him on the check and had been immediately placed back by him and credited on his own account.    *Benton v. Bank*, 122 Mo. 332; *Oddie v. Bank*, 45 N. Y. 735; 2 Morse on Banks and Banking [3 Ed.], sec. 451.   The bank thereby became a purchaser for value, in the ordinary course of business, of the instrument, and entitled to collect the proceeds thereof to its own account if it acquired plaintiff's title by indorsement.   So that the

only question is, did Harris in his official capacity as secretary have power to transfer the check by indorsement.

By the by-laws the secretary was made the general fiscal agent of the association—the custodian of all its securities, whether bonds, bills, notes, drafts, checks, or whatever their form might be. To him and to him alone was entrusted the duty of keeping the accounts of the association and of collecting all moneys due or coming to the association on account of such securities or from any other source. All moneys were to pass through his hands into those of the treasurer whose only authority was to receive the moneys of the association from the secretary and pay the same out in the manner prescribed by the by-laws. The by-laws were, of course, made for an association to be conducted in accordance with the business principles of the age, and it would be a strange construction of those by-laws, in an age in which nine tenths of the business of the country is transacted through the medium of bills of exchange, inland drafts and bank checks, to hold that this secretary, who it is conceded had full power to collect the loan from Richardson, and in doing so to receive the check of Brumback therefor payable to the association, and who had full power to collect said check, had not the power to indorse the check for the association. in order that he might have in hand the actual money which he was required to receive and to pay over to the treasurer. Although the by-laws do not in express terms give the power to indorse checks or to give acquittances for money received on account of the association, yet these powers are necessarily implied in the power given to the secretary to collect its securities, and pay the money for the same to the treasurer.

While by the by-laws all moneys are to pass through the hands of the secretary into those of the treasurer,

and he must have all the power necessary to enable him to collect the money for such securities and have it on hand for that purpose, they do not contemplate that it shall remain in his hands for any considerable length of time, or that it shall be paid out by him at all, and in order that no loss or inconvenience may result therefrom, the accounts showing the condition of its treasury were open at all times to the inspection of the board of directors, whose duty it was each month to meet, ascertain the amount in the treasury, and loan the same if practicable. Had these officers discharged their duties the exact condition of the fund arising from the collection of the loan to Richardson would have been known to them within ten or fifteen days after it had been received by Harris, and they could have then taken such measures for its disposal, and the protection of the association, as to them might have seemed necessary and proper. If the association has met with any loss by reason of a misapplication of that fund it must be charged to a breach of the trust reposed in one of its officers, and the neglect of duty by the others. It can not be charged to the bank on account of this transaction had with its seeretary who therein acted clearly within the scope of his authority. The judgment is affirmed. All concur.