A. DYMOCK, Respondent, v. MIDLAND NATIONAL BANK, Appellant.

67    97
d92   301

Kansas City Court of Appeals, May 15 and June 15, 1896.

1. **Banks and Banking**: DRAFT FOR COLLECTION: DEPOSITOR. The right of the bank to charge the draft deposited for collection back to the depositor in case of non payment does not change the relation of banker and depositor.

2. ————: DEPOSIT SUBJECT TO CHECK: ANTECEDENT DEBT. Where the customer deposits a draft for collection and the same is credited to him on the bank books subject to his check, the bank is a purchaser for value and it can not be treated as collateral security for an antecedent debt.

3. **Stoppage in Transitu**: COLLATERAL SECURITY: ANTECEDENT DEBT. Where a bill of lading is taken as collateral security and not in payment of an antecedent debt, the holder acquires no such right as cuts off the vendor's right of stoppage in transitu; explaining *Dymock v. Bank*, 54 Mo. App. 400.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED AND REMANDED (*with directions*).

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) Where, by a course of business, a customer deposits checks, drafts, etc., in his bank, and the bank at once places the same to his credit on its books and

upon his pass book, the bank becomes the purchaser for value of the various items. It is the same as though the bank had purchased the items, paid cash for them to the customer, and the latter had returned and deposited the cash. *Building and Loan Ass'n v. Bank*, 28 S. W. Rep. (Mo). 633; *Benton v. Bank*, 26 S. W. Rep. (Mo.) 975; *Flannery v. Coates*, 80 Mo. 444; *Ayres v. Bank*, 79 Mo. 428; *Oddie v. Bank*, 45 N. Y. 735; s. c., 7 Am. Rep. 160; *Birch v. Bank*, 29 Atl. Rep. 72; *People v. Bank*, 28 N. Y. Sup. 407; Newmark on Bank Deposits, sec. 210; *Bank v. Mayer*, 14 S. E. Rep. 891; *Bank v. Gregg*, 28 N. E. Rep. 839. (2) Even in the absence of a custom or course of dealing when a customer discounts a note, draft, or other item, and the proceeds are placed to his credit, at a time when he has an overdraft at the bank, the credit reduces the overdraft and is a payment of it *pro tanto* and the bank then becomes a purchaser for value and entitled to protection as such. Newmark on Bank Deposits, sec. 79; *Draper v. Cowles*, 27 Kan. 484; *Mann v. Bank*, 30 Kan. 422; *In re Carew's Estate*, 31 Beav. 39; 2 Randolph on Commercial Paper, sec. 994. (3) The proceeds of the draft, when credited to the Currier Commission Company, being a payment or extinguishment *pro tanto* of an overdraft, makes the bank, under the rule in this state, a purchaser for value. The payment or extinguishment of an existing indebtedness is a sufficient consideration. *Bank v. Frame*, 112 Mo. 502; *Crawford v. Spencer*, 92 Mo. 509; *Fitzgerald v. Barker*, 96 Mo. 661, 664; *Wine Co. v. Rinehart*, 42 Mo. App. 171; *Lawrence v. Owens*, 39 Mo. App. 318, 323. (4) The bank, being a purchaser for value of the draft attached to the bill of lading, takes the bill of lading in the same manner as it takes the draft. *Hagerman v. Sutton*, 91 Mo. 519, 532.

*Charles B. Adams* and *Charles R. Pence* for respondents.

(1) The holder of a bill of lading taken either in payment of, or as collateral for, a preexisting debt, is not entitled to claim the property covered by the bill, as against the rights of the unpaid vendor. *Dymock v. Railroad*, 54 Mo. App. 400; *Goodman v. Simonds*, 19 Mo. 106; *Wine Co. v. Rinehart*, 42 Mo. App. 172; *Conrad v. Fisher*, 37 Mo. App. 352; *Loeb v. Peters*, 63 Ala. 243; *Lesassier v. Southwestern*, 2 Woods (U. S.), 35. (2) An unpaid vendor may reclaim his property after he has parted with possession, even in the hands of a subvendee, who purchased for value and without notice. *Commission Co. v. Bank*, 116 Mo. 559; *Griffin v. Pugh*, 44 Mo. 326; *Little v. Page*, 44 Mo. 412; *Parmlee v. Catherwood*, 36 Mo. 480; *Bank v. Railroad*, 44 Minn. 224; *Freight Co. v. Plank*, 45 Mo. 517; *Dowe v. Perine*, 16 N. Y. 325. (3) The defendant bank not having changed its position, and not having paid out any money on checks, or made any advances upon the faith of the bill of lading in question, is not entitled to invoke the principle of equitable estoppel in support of its claim of title to plaintiff's property. *Conrad v. Fisher*, 37 Mo. App. 352; 2 Herman on Estoppel, pp. 925 and 1116; *Weaver v. Lynch*, 25 Pa. St. 449; 7 Am. and Eng. Encyclopedia of Law, 18; *Zuchtman v. Roberts*, 109 Mass. 53; *Andendreid v. Bettelsey*, 5 Allen, 382; *Hawes v. Merchant*, 1 Curtis C. C. 136, 144; *Turner v. Coffin*, 12 Allen, 401; *Brick Co. v. Newmeister*, 15 Mo. App. 592; *Noble v. Blount*, 77 Mo. 235. (4) In order to cut out the unpaid vendor, it is essential under the law of this state that the subvendee should have paid value for the property or changed its position for the worse upon the faith of the instrument under which he

claims title, without notice of the vendor's right. *Commission Co. v. Bank, supra*; *Conrad v. Fisher, supra.*

SMITH, J.—By reference to 54 Mo. App. 400, a full report of this case when it was here on a former appeal will be found. For the purpose of a general understanding of the present case, we think the statement there will suffice.

Every question arising on the record in the case now before us, except that which we shall hereafter notice, was there fully considered and determined. The only question in the case remaining to be determined is whether the defendant bank was a *bona fide* holder of the bill of lading with draft attached.

It appears from the uncontradicted testimony of Mr. Winants, vice-president of the defendant bank, that the Currier Commission Company was a customer of the defendant bank, and had been for several years before the date of the transaction out of which the present controversy arose, and that the course of dealing between the said commission company and defendant bank was that the latter kept an account with the former and borrowed money of such latter, both on notes and overdraft; that on the morning of the twenty-seventh of October, 1891, the date of the transaction above referred to, the aggregate amount of the notes and overdraft owing by the commission company to the defendant bank was $14,500; that by an arrangement between the commission company and the defendant bank, the former was to leave with the latter elevator receipts, shipper's orders, bills of lading, sufficient to protect the loans to the former; that the bills of lading left in the defendant bank, *without any draft attached*, were to be held by it as collateral security for the amount of loans, while the *bills of lading with draft attached* were received and placed to the credit of

the commission company as a deposit of so much money; that for the amount of a deposit of the bills of lading with draft attached, the receiving teller would give a receipt by entering the same on the pass book of the commission company; that the bills of lading with draft attached would then be entered on the collection register and sent to the point where payable, either directly or through some intermediate bank; that if, during a day's business, the amount of the checks of the commission company on the defendant bank were in excess of that of the deposit of the former's bills of lading, with draft attached, and other cash items, that excess would constitute an overdraft, and if there was an overdraft at the close of the preceding day's business, it would have the effect to necessarily augment that overdraft; that when a bill of lading with draft attached was returned unpaid, the defendant bank would deliver it to the commission company and take its check for the amount thereof, and in that way charge back the amount of the unpaid draft; that on the morning of October 27—the day the bill of lading with draft attached was deposited—the account of the commission company was overdrawn $3,600; or, in other words, that was the amount of its overdraft; that the commission company deposited in the course of that day's business, including the draft in question, the sum of $2,118 and checked out $1,173, so that the overdraft, at the opening of the defendant bank on the morning of the twenty-eighth of October, had been reduced to the amount of the difference between the two last named amounts; that said draft was returned to defendant bank unpaid after the failure of the commission company, but was not taken up by the latter, as had been the usual custom; that while its account with the defendant bank had a credit, it

had no corresponding debit for the amount of said draft.

It thus is made plainly to appear from this undenied testimony that the commission company had delivered to the defendant bank the bill of lading with the draft attached and had received a credit therefor on the books of the bank, which had the inevitable effect to reduce the overdraft or indebtedness of the former to the latter. The result of the transaction was that the overdraft of the commission company was extinguished *pro tanto.* There is no evidence presented by the record that in the least tends to prove that the defendant bank received the bill of lading and draft for collection and credit, but the undisputed evidence is that it received the same as a cash deposit, and that it was so entered on the defendant bank's books of account. By the very act of the deposit, the Currier Commission Company applied the amount thereof to the reduction or extinguishment of its debit or overdraft.

It has been for quite a while the settled law of this state that the fact that a bank exercises the right to charge the draft back to the account of the depositor, in case it is not paid, or to call upon such depositor to make the amount thereof good by his check, does not in any way change or affect the ordinary legal relation of banker and depositor, which relation is that of debtor and creditor. *Ayres v. Bank,* 79 Mo. 421; *Bullene v. Bank,* 79 Mo. 426; *Bank v. Rose,* 60 Mo. App. 585. By giving credit for the draft, the defendant bank became a *bona fide* holder of the bill of lading to which it was attached. Newark on Bank Dep., sec. 87; Morse on Banking, sec. 573. The extinguishment of the overdraft of the commission company by the deposit of the said bill of lading and draft thereto attached, in the light of the many authorities cited in the brief of

counsel for the defendant bank, constituted a sufficient consideration for the transfer of the bill of lading, and made the defendant bank a *bona fide* holder of the draft.

The effect of receiving the bill of lading with check attached and giving the Currier Commission Company credit for the amount of the draft on the books of the defendant bank, as so much money deposited, against which the former could immediately thereafter draw, was to make, as we think, the defendant bank a purchaser for value. Such being the case, the title passed from the commission company and vested in defendant bank, so that the latter became the absolute owner thereof. *Kavanaugh v. Bank,* 59 Mo. App. 540; *Benton v. Bank,* 122 Mo. 332.

And since the overdraft of the commission company to the defendant bank was an antecedent debt, the taking of the bill of lading with the draft thereto attached, in satisfaction or extinguishment of such overdraft, rendered the defendant bank a holder of such bill of lading and draft, a holder for value. *Lawrence v. Owens,* 39 Mo. App. 318; *Redpath v. Lawrence,* 42 Mo. App. 101; *Napa Wine Co. v. Rinehart,* 42 Mo. App. 171; *Strauss v. Hirsch* (not yet reported); *Dymock v. Bank,* 54 Mo. App. 400; *Bank v. Frame,* 112 Mo. 502; *B. & L. Ass'n v. Bank,* 126 Mo. 82; *Hodges v. Black,* 76 Mo. 537; *Fitzgerald v. Barker,* 96 Mo. 664.

In *Dymock v. Bank, supra,* we are reported as saying that: "Where a bill of lading is taken as collateral security for, or in payment of, antecedent indebtedness, the holder acquires no such right to the goods as cuts off the vendor's right of stoppage *in transitu.*" It is obvious from the context that what we meant to have said was that, where a bill of lading is taken as collateral security, *and not in payment of antecedent*

*indebtedness*, the holder acquires no such right as cuts off the vendor's right of stoppage *in transitu*.

In *Bank v. Railroad*, 62 Mo. App. 531, it was said by Judge GILL, who delivered the opinion in the case, that "the delivery of the bills of lading to the bank effected a pledge of the property, to the same extent and with the same validity as if it had been actually delivered. The bills of lading were symbols of the grain—represented it—and their transfer by delivery stood as an actual change in the possession of the grain itself. The plaintiff bank held the property as collateral security for advances made to the Currier Commission Company, and so far as it was necessary to the holder's protection, plaintiff had the legal title and was vested with all the rights and remedies of a purchaser for value." The foregoing remarks were made in relation to the rights of the bank, under a bill of lading deposited with the defendant bank by the commission company as *collateral security*. In the present case, the bill of lading had a draft thereto attached and was taken by the defendant bank as so much cash deposited, which was passed to the credit of the commission company and against which it could, and did, draw its checks. So that the defendant bank's rights in respect to the grain were far more impregnable than in the case just referred to.

From the foregoing considerations, it is manifest that the instruction given by the court on its own motion, in effect asserting the theory that before the defendant bank could recover it was incumbent on it to prove an agreement or understanding whereby it took the bill of lading and draft in part payment, or in extinguishment of the overdraft of the commission company, and that in the absence of such proof it neither paid anything for the bill of lading and draft, nor did it change its position, nor suffer any loss and,

therefore, was not a *bona fide* holder for value against the unpaid vendor of the grain, represented by the bill of lading, was, in view of the principles and authorities to which we have adverted, an erroneous expression of law applicable to the facts which the undisputed evidence tends to prove. Upon no theory of the law applicable to the evidence adduced was the plaintiff entitled to recover the grain called for by the bill of lading, as against the defendant bank, an innocent holder of the said bill of lading for value.

In any view that we have been able to take of the case, we think that both law and fact are with the defendant and the judgment, which is against it, must be reversed and the cause remanded, with directions to enter judgment for the defendant bank. All concur.