AMERICAN VALLEY COMPANY, Appellant, v. W. F. WYMAN, Respondent.

Kansas City Court of Appeals, February 10, 1902.

1. **Bills and Notes:** BROKER: BANKER.  W received from S certain notes for the purpose of negotiating a sale thereof.  This he did and charged commission therefor.  *Held*, W was a mere note-broker and no relation of debtor and creditor existed between him and S. Cases distinguished.

American Valley Co. v. Wyman.

2. ———: ———: BOOK ENTRIES: EVIDENCE. Entries in the private books of a broker can not be used to transfer the title of money or property out of another party into himself and such entries by themselves have no probative force.

3. ———: ———: TRANSFER: CONSIDERATION. Where a broker received notes for the purpose of sale merely and received his brokerage therefor, he is not a bona fide holder of said notes or their proceeds so as to defeat the equities of third parties, since he gave no consideration whatever for the paper.

4. ———: ———: EQUITIES: JURY QUESTION: EVIDENCE: NOTICE. An agent sold certain cattle and took the purchaser's note which he handed to a broker who sold the same and charged brokerage therefor. The principal demanded the proceeds of the note and on refusal brought his action for money had and received against the broker. *Held,* when the evidence tended to show that he was the owner of the cattle and the note taken in the name of the agent was for their purchase price and he had brought these facts to the knowledge of the defendant, he was entitled to go to the jury and it then devolved on the defendant to show he was a bona fide holder for value and plaintiff did not have to show that the defendant at the time of receiving the note had notice of his claim.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED AND REMANDED.

*Botsford, Deatherage & Young* for appellant.

(1) The defense of innocent purchaser for value without notice is not available to the defendant in this action, for the reason that the fact of his being an innocent purchaser, if it existed, is a defense which can not be raised by a general denial, but must be affirmatively pleaded in the answer and the burden is on the defendant making the plea. Holdsworth v. Shannon, 113 Mo. 508-524. (2) The authorities are to the effect that on the facts of this case defendant was not an innocent purchaser. Bank v. Valentine, 18 Hun 417; Bank v. Newell, 71 Wis. 309; Fox v. Bank, 30 Kan. 441; Der-

rilling v. Bank, 43 Kan. 197; Bank v. Belt, 29 Ill. App. 194; Mechem on Agency, secs. 774-785; Burtnett v. Bank, 38 Mich. 630; Caty v. Bank, 46 Neb. 756; Van Allen v. Bank, 52 N. Y. 1; Bank v. Harrison, 127 Ind. 128; Armstrong v. Bank, 53 Iowa 752. (3) Even if defendant Wyman had known nothing about the ownership of the plaintiff in a part of the proceeds of the Gregory and Olson notes still the crediting of the proceeds of these notes on the obligations of Slaughter wholly past due would not make Wyman an innocent purchaser without notice of these facts. And this is so either with or without the consent of Slaughter. Napa Valley Wine Co. v. Rinehart, 42 Mo. App. 171.

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) In an action for conversion of personal property, it is not necessary that the defense of innocent purchaser should be affirmatively pleaded. Westbay v. Milligan, 74 Mo. App. 179; Thresher Co. v. Pierce, 74 Mo. App. 676; Hilz v. Railroad, 101 Mo. 36. (2) The defendant accepted the notes under such circumstances as made him a purchaser for value, and he is, therefore, entitled to hold the proceeds as against the plaintiff. Building & Loan Association v. Bank, 126 Mo. 82; Benton v. Bank, 122 Mo. 332; Dymock v. Bank, 67 Mo. App. 97; Newmark on Bank Deposits, sec. 79; Draper v. Cowles, 27 Kan. 484; Mann v. Bank, 34 Kan. 746; In re Carew's Estate, 31 Beav. 39; 2 Randolph on Commercial Paper, sec. 994.

SMITH, P. J.—This is an action for money had and received. The answer was a traverse and denied the petition. The principal facts out of which the controversy arose may be aggregated in about this way. The plaintiff was an incorporated company operating a cattle ranch in New Mexico. In the year 1893, and for several years thereafter, one

Slaughter was its president and general manager. In that year the said Slaughter shipped to Geneseo, Kansas, 478 head of cattle. One hundred and fifty head of these were the property of the plaintiff and were branded with the letter "S." The remainder were the property of several other New Mexico owners, who had intrusted the possession of them to said Slaughter to sell under an agreement by which he was to account to them for fifteen dollars per head. After the arrival of the cattle at the place of shipment in October, 1893, he sold 419 head of them to one Gregory for $9,983.50, and the remaining number—sixty head—were sold to one Olson for $1,300.

The purchasers executed to said Slaughter their several negotiable promissory notes for the amount of this purchase money, due six months after date, securing said notes by a separate mortgage on the cattle they had each purchased. The cattle were sold at the price of about twenty-one dollars per head or for the entire sum of $11,283. Shortly after Slaughter received the Gregory and Olson notes, he indorsed his name thereon and delivered them to the defendant, who was engaged as a broker in handling paper of that kind, to be negotiated and sold. The defendant, in the months of December and January following, negotiated a sale of said notes and received the proceeds thereof, amounting to $11,300.59.

Previous to the delivery of the notes to defendant, other transactions had taken place between them. The former alone and in connection with others, was indebted to the defendant by his and their indorsements of notes secured by mortgages in live stock in a large amount. The defendant kept an account on his books with Slaughter in which he charged himself with the amount of cash of said Gregory and Olson notes as collected by him. The amount of each of these notes was credited in the defendant's bills-receivable account. This was the way the defendant applied the pro-

ceeds arising from the sale of the notes. The plaintiff claimed that it was entitled to receive as its share of the proceeds of the sale of said notes, twenty-one dollars per head for the 150 cattle belonging to it which had been sold by Slaughter to Gregory and Olson, and for which said notes were given, or in the aggregate amounting to $3,150. This claim the defendant declined to recognize.

The cause was tried by the court sitting as a jury. It appears from the instructions of the court that it found from the evidence, as well it might, these further facts: (1) That the 150 head of cattle branded "S" were a part of the shipment from New Mexico, were sold to said Gregory, and were the property of the plaintiff. (2) That there was no evidence that plaintiff ceased to own said cattle until sold to said Gregory. (3) That the 150 head of cattle branded "S" sold to said Gregory for twenty-one dollars per head, or $3,150, and that the notes turned over to defendant for sale represented that amount of the money and property of the plaintiff.

The court found for defendant and gave judgment accordingly and the plaintiff appealed. The errors complained of relate entirely to the action of the court in giving and refusing instructions. These instructions disclose the theory upon which each of the parties sought a consideration of the case. The court, by refusing the plaintiff's fifth, giving the defendant's second, third and fourth, rejected the plaintiff's theory and adopted that of the defendant. The proposition asserted by the defendant's instructions in effect was that if the defendant discounted said notes and placed the proceeds thereof to the credit of Slaughter, and if he (Slaughter) was then indebted to defendant on his overdue paper in excess of the amount of such proceeds, then he became an innocent purchaser for value. That asserted by those of plaintiff was that the defendant, in accounting for the proceeds of the sale of said notes, had no right to apply to the indebtedness

of Slaughter to him, that part of it belonging to plaintiff amounting to $3,150.

It seems to us, from the evidence, that the defendant in this transaction was only a bill-and-note broker. He received the notes in question for the purpose of negotiating a sale of them, which he did, and for which he charged a brokerage. It appears that the difference between the amount of the proceeds of the sale of the notes and that with which he charged himself in his account with Slaughter, was $485.74, so that it may be fairly inferred that this amount was retained by him as brokerage. It does not appear that the defendant was a private banker doing business in conformity to the provisions of the statute (secs. 1298, 1299, 1300, 1301, R. S. 1899), nor does it appear from the account between Slaughter and defendant, or elsewhere in the record, that during the several years covering the varied transactions between Slaughter and the defendant, in which the defendant must have paid Slaughter many thousands of dollars, that a single check was drawn by the latter on the former.

The defendant, in support of the theory of his defense, cites us to a class of cases of which B. & L. Ass'n v. Bank, 126 Mo. 82, is a type. In this case it was, in substance, held that where the secretary of a building and loan association had been in the habit of depositing in a bank, checks payable to the association, sometimes in his own name and at others to that of the association without objection by the officers of the association, and had deposited a certain check drawn on another bank in favor of the association which was indorsed by the secretary and credit requested and given to his individual account for the amount on the books of the bank, that this was the same thing as if it had been paid to him over the counter and then deposited in his own name, and that in such case the bank became a purchaser for value in the ordinary course of business and had the right to collect the check and apply the proceeds to its own account, provided it acted

in good faith in the transaction. It appears that after the secretary checked out the amount of the deposit so made he became an absconding defaulter. The action by the association was that for money had and received. That case is clearly distinguishable from this for there the bank was not apprised of the fraud of the secretary in the application of the check to his own account instead of to that of the association until the proceeds arising from the collection of the check had passed out of its hands. It acquired a good title to the check, and if it paid out on the individual checks of the secretary the amount so credited to him on its books before receiving notice of the fraud and misapplication of the amount of the check, it could not be held liable, although in equity the collection of the check in the first instance impliedly was for the use of the association.

Here the defendant is not a private banker in a legal sense and had not discounted the notes or purchased them from Slaughter at all. He had, as the agent and broker of the latter undertaken to negotiate a sale of them. Neither at the time he received the notes nor afterwards did the defendant pay to Slaughter any money or part with any valuable right or thing in consideration of any sale or hypothecation of the notes to him, except the sum of five hundred dollars, which, at Slaughter's instance, he paid to Mr. Tyler, in January, 1894, for one of the parties, other than plaintiff, who owned a part of the Gregory and Olson cattle and was in that way interested in the notes and the proceeds arising from the collection thereof. It is true that as the several notes were sold and the proceeds thereof received, the defendant, on his own private books of account, charged himself and credited Slaughter with the amounts thereof, but it is not pretended that this was done under any special agreement with or authority from Slaughter, or any one else. The defendant could not, by making entries on his own private books without the assent of the parties to be affected thereby, acquire

any greater right to the proceeds of the notes than he would have had, had such entries never been made. No man, however skillful in bookkeeping, will be permitted by his entries on his own private books of account to write the title to money or property out of another into himself without the consent of such other. The entries on the defendant's books offered as tending to affect the rights of the plaintiff, must be brushed aside as having no probative force.

The case then is that where the defendant, a bill-and-note broker, received of the agent of several undisclosed principals, notes indorsed by such agent to be sold, and when such broker negotiated the sale, received the proceeds and applied the same to the extinguishment of the antecedent indebtedness of the agent to him, and after notice from the principals that they were the owners of the cattle for the purchase price of which the notes were given to the agent by the makers thereof, and that they were entitled to receive of the defendant their interest in the proceeds of said notes in his hands, persisted in his refusal to pay over to them, or either of them, their share in the money so in his hands. We have no doubt that under the ruling in Dymock v. Bank, 67 Mo. App. 97, and the cases there referred to, that if the defendant had, in good faith, taken the notes in payment of antecedent debts due to him by Slaughter, and had thereby released any indebtedness or security therein, or if he had been a private banker and Slaughter had sold the said notes to him as such banker and his account on the books of the bank had received a credit subject to check, or if his account with the bank had stood overdrawn and the deposit had gone to extinguish his overdraft in whole or in part, the defendant would have been a purchaser of the said notes for value and so protected. For sufficient reasons already stated, the rule of the Dymock case is inapplicable to this.

The notes in the present case were not received for discount and deposit to the credit of Slaughter's account on

the books of the defendant in the capacity of private banker, so that the simple relation of debtor and creditor was thereby created between Slaughter and the bank which could have been discharged by the payment of the checks of the former against the balance on his account. Nor does this case resemble that of Mayer v. Bank, 86 Mo. App. 422, or any of the cases there cited, where one holding a fund in a fiduciary capacity deposits it with a bank to his own credit and in consequence of which it becomes so mingled with the general balance to his credit that its identity becomes lost, and so can not be followed.

It is not disclosed by the evidence that there was an express or implied agreement between Slaughter and defendant that the said notes or the proceeds arising therefrom when collected by defendant, should be taken on the actual payment and extinguishment of the overdue notes of Slaughter, nor does it appear that the defendant, in consideration of the receipt of said notes extended the time of the payment thereof until said notes should be sold and the proceeds collected, nor that said notes were taken as collateral security on said pre-existing indebtedness, so that it can not be said that the defendant became a bona fide holder of said notes, or the proceeds thereof, for value, freed of the equities of the plaintiff. Crawford v. Spencer, 92 Mo. 499; Fitzgerald v. Barker, 96 Mo. 661; Bank v. Frame, 112 Mo. 502; Napa Valley Wine Co. v. Rinehart, 42 Mo. App. 171; Redpath v. Lawrence, 42 Mo. App. 101; Lawrence v. Owens, 39 Mo. App. 318; Hess v. Clark, 11 Mo. App. 492. The great weight of authority, both English and American, is to the effect that to constitute a holder of commercial paper a bona fide holder for value, in a commercial sense, he must have parted with something at the time of taking the paper. Randolph on Comr. Paper, sec. 463, and authorities cited in note, 176. As has been already stated, the record does not disclose the slightest evidence that defendant, at the time of the re-

ceipt of the notes, surrendered to Slaughter any of the notes evidencing his pre-existing indebtedness, nor of any indorsement of credit thereon, nor any other act from which it could be inferred that the said notes were taken in the absolute extinguishment of the whole or any part of the Slaughter notes.

When the plaintiff adduced evidence, as he did, tending to show that he was the owner of a part of the cattle sold by Slaughter to Gregory and Olson; that the latter gave their notes for the purchase price to Slaughter, and that he delivered them to defendant to be sold; that he had sold them and had in his hands the proceeds thereof; that plaintiff's interest in the notes was equal to $3,150, and that these facts had been brought to defendant's notice, then the plaintiff had made out a prima facie case entitling him to a submission. The burden was then cast upon the defendant to show that he received the said notes under such circumstances as constituted him a bona fide holder thereof for value. It *was not* primarily required of plaintiff, in order to make a prima facie case, to prove that the defendant, *at the time of the receipt of the notes,* had notice of plaintiff's claim of ownership to some of the cattle that were included in those sold to Gregory and Olson and for the purchase price of which the notes were given. It was only required of him to show that the defendant received such notice before he paid over the proceeds of the notes to Slaughter, or to his order, to hold defendant liable.

It must, therefore, follow that the court adopted an erroneous theory in the consideration of the cause, and that the defendant's second, third, fourth and fifth instructions were inapplicable expressions of the law to a case like the present. No reason is seen why the plaintiff's fifth instruction should not have been given.

There are some other questions discussed in the briefs

of counsel but these, in view of what has been said, need not be noticed.

The judgment must be reversed and the cause remanded. All concur.