## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

### Spoor v. Tilson and Others.

September 11, 1902.

1. Specific Performance—*Defective Title—Case in Judgment.*—In this case a vendee of real estate purchased under a written contract, stipulating for a deed with covenants of special warranty as to an interlock mentioned, and expressly assuming the burden of any litigation that might arise with respect to it. He entered into possession, and began to fell timber when he was enjoined at the instance of the claimant of the interlock, but an opportunity was afforded him of perfecting his title and testing the right by an action of ejectment. He tendered to his vendor a deed to be signed in order to perfect his title, but the vendor declined to sign because the deed conveyed more land than was called for by the contract, and also because the vendee did not tender the purchase money, all of which was then due. Failing to perfect his title, the injunction was made perpetual. The vendor then sued for specific performance. The vendee resisted on the ground of the failure of the vendor to convey on request, and also because, as alleged, the vendor had caused the quantity of land charged to him to be reduced on the land books. The action of the Commissioner of the Revenue in reducing the quantity of the land on his books was a mistake, was unauthorized by the vendor, but in no wise induced the sale, or influenced the result of the injunction suit in any degree. No false representations were made by the vendor as to the interlock.

*Held*: The vendor is entitled to a decree for specific performance.

Appeal from two decrees of the Circuit Court of Smyth county, pronounced, respectively, December 27, 1899, and March 25, 1900, in a suit in chancery, wherein the appellees were the complainants, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

*James H. Gilmore,* for the appellant.

*J. H. Fulton* and *H. N. Bell,* for the appellee.

Keith, P., delivered the opinion of the court.

This is the sequel of the case of *Spoor* v. *Tilson,* reported in 97th Va., at page 279.

James Tilson occupied and controlled a tract of land containing about 600 acres, the title to which was in a trustee for the benefit of his wife and her children. Tilson had cultivated this property and paid the taxes on it for a number of years prior to July 11, 1890, upon which date he and his wife and his children entered into a contract with W. M. Spoor for the sale of 300 acres of this land, more or less, at the price of $3,500, to be paid in four equal annual payments. The purchase money not having been paid, the Tilsons filed their bill praying the specific performance of the contract. Spoor answered this bill, stating that he purchased from the complainants a tract of land lying on the foot-hills of the Iron Mountain, in Smyth county, at the price of $3,500, the vendors pointing out the boundary lines thereof, and representing the same to be unencumbered, except to the extent of a conflict of title with the heirs of George Douglas; there being an overlap of lines with these lands, and, as to this overlap, they desired to sell with covenants of special warranty; that the property was desirable as a whole, because of its showing for mineral deposits, and as such was purchased, but respondent ascertained that the representation of ownership and possession made to him was false and fraudulent, and that in fact as far back as the year 1885, complainants had entered on the commissioner's book of Smyth county a disclaimer of right and title to 200 acres of the land sold by them. He further states that he would not have purchased the property except as a

whole, and he denies the right of the complainants to require him to take the residue of the tract sold after the surrender of 200 acres to the Douglas heirs.

When the case was before us upon a former occasion, we were of opinion that the Circuit Court erred in sustaining a demurrer to this answer, which was considered as a cross-bill; being of opinion that if its averments were sustained by proof the defendant would be entitled to a rescission of this contract. The case was remanded to the Circuit Court, where a decree was entered in which it was held that the averments of the answer and cross-bill were untrue, and it was decreed that unless Spoor or some one for him should pay the balance of the purchase money within thirty days the land should be resold.

The land in dispute was derived under a title from the Commonwealth by virtue of a grant as early as 1787. It adjoined on the south and interlocked with a boundary of land known as the "Douglas survey," title to which is derived under a patent issued by the Commonwealth in 1795. The Tilsons and those under whom they claim, it will thus be seen, had the older title, and possession under it. By the terms of the contract of sale to Spoor, it was provided that a deed conveying the land "should contain all the usual covenants of general warranty, except as to the Douglas land or big survey, and as to it with special warranty—possession given with the signing of this contract—a lien is retained for the purchase moneys."

It appears from the parol evidence that Spoor fully understood the nature of this contract, and the title which he was to acquire, and that he was to conduct at his own expense any litigation with respect to any controversy growing out of the interlock with the Douglas survey.

In 1885 James Tilson complained to the assessor, who was at his house for the purpose of assessing his land, that he was paying too much taxes theron; and thereupon the assessor, without his knowledge or that of his wife and children, reduced the area

of the land assessed from 600 acres to 400 acres. This fact, un-known to the Tilsons at the time, did not come to their knowl-edge for a year or two, and at the next assessment in 1890 they called the attention of the commissioner to it, but the correction seems not to have been made until 1895, when it was restored to 600 acres.

Soon after Spoor was put in possession of the land he com-menced to cut timber upon it. Thereupon an injunction issued by the Circuit Court of the United States, at the suit of the Douglas Company, was served upon him, forbidding him to cut any more timber, or to take away that which had already been cut. At the May term, 1896, the Circuit Court of the United States entered an order continuing this injunction until the 1st day of September, 1896, so as to give Spoor an opportunity to bring his action of ejectment, and providing that unless such suit was instituted on or before that date the injunction should stand perpetuated. Spoor, in order to acquire the legal title and be in a position to maintain an action of ejectment, caused a deed to be prepared which he presented to the Tilsons and re-quested them to execute, which they declined to do because it did not conform to the contract of sale in that it purported to convey 400 acres of land instead of 300 acres, more or less, and because Spoor did not pay or offer to pay the purchase money, all of which was then due. Under these circumstances, the Til-sons refused to execute the deed, and the result was that the injunction was perpetuated, and the land embraced in the Doug-las interlock was lost.

There is nothing in the evidence to show that the Tilsons made a false representation with respect to this interlock. What was done by the assessor seems to have been wholly unauthor-ized. His act, as shown by the proof, did not induce Spoor to make the purchase, for he knew nothing of it at the time, nor until 1896, a year after it had been entered, did not affect the title, was not relied upon by the Douglases in the injunction, and

Opinion.

did not influence the result in any degree. Spoor bought with special warranty as to this interlock, and expressly assumed the burden of any litigation that might arise with respect to it. If he had paid the purchase money or tendered it, he would have been entitled to receive from the Tilsons a deed which would have conveyed to him the undisputed legal title to the whole boundary which the Tilsons undertook to sell, and armed with the legal title, and clothed with possession under it, it cannot be doubted that he would have prevailed in an action of ejectment, notwithstanding the entry upon the assessor's books of which he complains.

We are of opinion there is no error in the decree complained of, and it is affirmed.

*Affirmed.*