PORGES v. UNITED STATES MORTGAGE & TRUST CO.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

1. PRINCIPAL AND AGENT (§ 109*)—AUTHORITY OF AGENT.

An agent who is employed to procure a note to be discounted may indorse it in the name of the principal, or he may, unless expressly restricted, indorse it in his own name, and claim indemnity of his principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 318–322, 360, 361, 365; Dec. Dig. § 109.*]

2. PRINCIPAL AND AGENT (§ 97*)—AUTHORITY OF AGENT—POWER OF ATTORNEY.

Under a power of attorney to sell or dispose of certain property, to accept in payment cash or other property, to sell the property so received, and with the proceeds pay off incumbrances, the agent could convert a check received for the property into cash by the indorsement thereof, though the check was made payable to the principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 344–376; Dec. Dig. § 97.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PRINCIPAL AND AGENT (§ 154*)—LIABILITIES—PAYMENT OF CHECKS.
    Where the agent to whom a check was given for his principal had au-
thority to indorse and cash the check, the bank on which it was drawn
is not after payment to the agent liable to the principal for the amount of
the check on the agent's subsequent misappropriation of the money.
    [Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 154.*]
    Ingraham and Clarke, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Julia W. Porges against the United States Mortgage &
Trust Company. Plaintiff had judgment, and defendant appeals. Re-
versed.

Argued before INGRAHAM, HOUGHTON, McLAUGHLIN,
CLARKE, and SCOTT, JJ.

Charles H. Tuttle, for appellant.
Henry Amerman, for respondent.

SCOTT, J. The defendant appeals from a judgment upon a verdict
rendered by direction of the court.

The action is for the conversion of a check deposited with defend-
ant by one A. E. Hoyt. The plaintiff being on April 25, 1907, the own-
er of two houses on West Twenty-First street, in the city of New York,
a mortgage upon which was being foreclosed, and wishing to dispose
of them, gave a very broad power of attorney to one A. E. Hoyt to act
for her. Hoyt effected an exchange of plaintiff's houses for a lot of
land at 172d street and Audubon avenue with one Duff, with whom was
associated in interest one Van Sant. The terms upon which this ex-
change was arranged required Duff and Van Sant to convey the Au-
dubon avenue property free from incumbrances, except a mortgage for
$35,000, and to pay $12,000 in cash, while the plaintiff was to pay off
all the incumbrances upon her property except the mortgage. These
incumbrances amounted to nearly $7,000. Hoyt cheated plaintiff, tell-
ing her that only $2,000 was to be paid in cash, and subsequently send-
ing her a bill for alleged disbursements, upon which he credited her
with $2,000 and some returned insurance premiums, showing an al-
leged balance due from her of $5,746, which she paid him. In fact,
Hoyt had received from Duff a check for $2,773.83 drawn to the order
of plaintiff on Hoyt, and from Van Sant a check for $4,000.

The action is for damages for the conversion of this $4,000 check.
The check was dated May 10, 1907, drawn by Van Sant to his own or-
der, and indorsed by him to the order of plaintiff. Hoyt received the
check, indorsed it, "Pay to the order of A. E. Hoyt, Julia W. Porges,"
and on May 14th with it opened an account with defendant. The plain-
tiff, who was herself at the time a depositor with defendant, says of
Hoyt's signature of her name:

"That signature is an attempt at an imitation of my signature in my opin-
ion. I would not consider it a fair imitation."

Afterwards Hoyt made deposits and withdrawals from the account,
and on October 5, 1907, shortly before this action was commenced, had
a credit balance of $509.37. Plaintiff learned on July 31, 1907, of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hoyt's action in depositing the check, but gave no notice to defendant until she commenced this action on or about October 17, 1907. The jury in answer to specific questions put to them by the court found that plaintiff did not exercise due diligence in notifying the defendant, and that in consequence of her silence it was damaged to the extent of $500. The verdict, directed by the court, was for $4,000 with interest, less the $500 damage suffered by defendant. In considering the questions involved in this appeal, it is desirable to keep in mind the fact, strongly insisted upon by plaintiff, that this is an action only for the conversion of the check, and not one to recover its proceeds. The only question, therefore, is as to Hoyt's authority to deposit the check to his own account with defendant. Whether or not he was so empowered depends upon the extent of the authority given him by the power of attorney upon which defendant relies. It reads as follows:

"April 25, 1907. For and in consideration of one dollar, to me in hand paid, the receipt whereof is hereby acknowledged, I, Julia W. Porges, individually and as executrix of the late John H. Porges, do hereby authorize Adelbert E. Hoyt to dispose of my property No. 218 and 220 West 21st street, borough of Manhattan, city of New York, at such price and under such conditions as he may see fit and to accept either cash or other property, or both, and take any property subject to existing encumbrances (if any) on said property so taken in exchange, and I hereby give to said Hoyt my full power of attorney to sign contracts and to execute any and all papers in connection therewith and also full authority to sign, sell and manage any property so accepted in exchange and to pay out any necessary money in settlement of interest, taxes, water, salaries or other bills of court costs and commissions for the sale of any of said properties, the same as if I did so myself, it being understood that the said 21st street property is now under foreclosure, and money must be paid in settlement in order to deliver deed of same, and that I shall lose my entire equity in same unless said Hoyt can effect some sale or exchange whereby some benefit may accrue, and therefore I give unconditional and unlimited authority to him to do anything he deems advisable with said property, and any money that must be paid in excess of what may or may not be received in said transaction I will pay to him in cash when called upon without accounting or defense of any character.
"(The following in pencil: Irrevocable under any condition.)
"[Signed]    Julia W. Porges.
"Witness:
"Mary W. Lillie."

It would be difficult to draw a more general and comprehensive power than this so far as concerns the selling of plaintiff's property and disposing of the proceeds. Hoyt was not only authorized to dispose of the property, but he was authorized to accept in payment "either cash or other property or both," and to sign, sell, and manage any property so accepted in exchange, and "to pay out all necessary money in settlement of interest, taxes, water, salaries, or other bills of court costs and commissions." The power expressly recognizes and recites that:

"The said 21st street property is now under foreclosure and money must be paid in settlement in order to deliver deed of the same."

Thus authority was given to Hoyt in express terms to accept cash in settlement of whatever sale he was able to effect, and undoubtedly the purchasers would have been protected if they had given him cash or a check to his order, as Duff did. It is also perfectly clear that it

was plaintiff's intention that Hoyt should use in the first place and so far as it would go whatever money was received upon the transaction to pay the charges upon her property; for her agreement was that "any money that must be paid in excess of what may or may not be received in said transaction, I will pay him in cash when called upon." Thus the authority given to Hoyt was to sell or dispose of the Twenty-First street property; to accept in payment cash or other property; to sell the property so received, with the proceeds of the sale to pay off the incumbrances, and, if such proceeds were insufficient, to receive the excess from plaintiff. It is true that the power did not in express terms authorize Hoyt to indorse checks drawn to plaintiff's order, but this we think was necessarily involved. If Van Sant had given Hoyt cash, as he might have done under the power, Hoyt might have deposited it in any bank in his own name. The check was simply a token representing cash. Hoyt had authority to use the cash derived from the transaction, and we think had likewise authority to convert the check into cash, which was the practical effect of depositing it. In fact, in so doing he was carrying out exactly what plaintiff authorized him to do, and intended that he should do. It is not always necessary that explicit authority must be given an agent to justify his indorsement of a check or bill drawn to his principal's order. An agent who is employed to procure a note to be discounted may indorse it in the name of his employer, or he may, unless expressly restricted, indorse it in his own name and claim indemnity of his principal. Nelson v. Hudson R. R. Co., 48 N. Y. 498. And the power to make and indorse negotiable instruments may be implied as a necessary incident of powers expressly conferred, as where an entire business or an entire transaction is intrusted to the agent, and it becomes necessary to make or indorse negotiable paper in order to effectually carry out the agency. Whitten v. Bank of Fincastle, 100 Va. 546, 42 S. E. 309; Gould v. Bowen, 26 Iowa, 77; Gate City Building & Loan Company v. Nat. Bank of Commerce, 126 Mo. 82, 28 S. W. 633, 27 L. R. A. 401, 47 Am. St. Rep. 633. We are of opinion, therefore, that the broad and unlimited power given to Hoyt authorized him not only to receive cash on a transfer of the property, but to convert into cash a check given on the transfer, even although that check was made payable to plaintiff. If so, he was entitled to deposit the check, and defendant was not guilty of a conversion in receiving it and placing the proceeds to Hoyt's individual credit. The fraud which Hoyt perpetrated on plaintiff was in his subsequent misappropriation of the money, if he did misappropriate this particular sum, and in his obtaining from plaintiff subsequently a large payment under false representations. For these frauds, defendant is not responsible.

The judgment appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event.

McLAUGHLIN and HOUGHTON, JJ., concur. INGRAHAM and CLARKE, JJ., dissent.