No. 22,552.

## THE CHAMBERLIN METAL WEATHERSTRIP COMPANY, *Appellee,* v. THE BANK OF PLEASANTON, *Appellant.*

### SYLLABUS BY THE COURT.

BANK CHECK—*Authority of Agent to Indorse Check Drawn in Favor of His Principal*   A corporation of Michigan sent its agent to Kansas to contract for and supply weather strips to such customers as he could induce to purchase them.  The form of contract furnished to and used by him provided for payment in cash on completion of the work.  On completing a contract with one customer she gave him a check on a local bank whose cashier knew he had been in the vicinity for some time filling similar contracts.  The agent indorsed the check: "Chamberlin Metal Weatherstrip Co. By Sprague T. Haskell, Agent," and the bank paid it to the agent, who absconded with the proceeds.  *Held,* that the principal cannot compel the bank to pay to it the amount of the check thus indorsed and collected by its agent.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed June 5, 1920.  Reversed.

*John A. Hall,* of Pleasanton, for the appellant.

*Charles F. Trinkle,* of La Cygne, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from a judgment holding it liable for the amount of a check cashed by it.

The plaintiff sent its agent, Sprague T. Haskell, out to sell weather strips and authorized him to contract with Mrs. S. J. Ellis to supply strips for thirty-six openings.  The contract closed with the following words:

"Terms: Unless specially written herein are cash on completion of work.

Respectfully submitted July 1st, 1912, In Duplicate.

CHAMBERLIN METAL WEATHERSTRIP CO.

By SPRAGUE T. HASKELL."

Haskell, who took several other orders in the vicinity, filled this for Mrs. Ellis and received her check for $134 on the defendant bank, receipting therefor in the following words on the back of the contract:

"July 16, 1912. Received of Mrs. S. J. Ellis check for one hundred and thirty-four dollars in full of this contract.

CHAMBERLIN METAL W. S. CO.<br>By SPRAGUE T. HASKELL."

The collection manager of the company testified that Haskell was not authorized to collect any money from Mrs. Ellis for him, or to sign or indorse any checks for the company, or ever permitted to do so. It seems that the money never reached the company. The secretary and treasurer testified that he never authorized Haskell to collect money from customers, and that he never had any authority to take money from Mrs. Ellis. It was agreed that Mrs. Ellis gave the check to Haskell, who indorsed it—

"CHAMBERLIN METAL WEATHERSTRIP CO.<br>By SPRAGUE T. HASKELL,"

and presented it to the bank and received payment. The company wrote to the bank's attorney that a review of the correspondence failed to show that Haskell had any authority to collect accounts—

"The contract also states that remittances be sent direct to either the St. Louis office or Detroit office."

Later, he wrote that he took it for granted that the Ellis contract was on the form containing this clause. As a matter of fact, the contract contained no such clause whatever..

The cashier of the defendant bank testified that Haskell came in and talked to him about various jobs he was doing in the vicinity; that he was around there about sixty days; and that he, the cashier, knew of no one else connected with the company. There was testimony of other witnesses to the effect that Haskell was the only man in the neighborhood doing business for the company.

The theory of the plaintiff is that Haskell had no authority to indorse the check and therefore the bank paid it to him at its peril and must pay it over again. It is plain that Haskell was the agent of the company, and the only one in the vicinity of Pleasanton who had any connection with the company and was acting on its behalf in contracting for weather strips, and that the contract with Mrs. Ellis specifically provided for cash payment upon completion of the work, and bore no sort of indication that such payment could be made to anyone

other than Haskell, or at any place except Pleasanton. It is equally clear that had Haskell collected the cash from Mrs. Ellis and absconded with it the company could not look to her for payment over again. So the one question is whether or not the weatherstrip company can send an agent into a neighborhood with material and authorize him to contract for and to carry out contracts for weather strips, payment to be made in cash upon completion of the work, and then when he takes a check instead of cash and indorses it as in this case, the bank whose cashier knows that he has been doing this sort of work for the company for several weeks, and which honors the check must lose rather than the company whose agent has failed to remit. There is certainly nothing in the elements of justice and fair dealing to lend support to the plaintiff's contention, and unless some settled rule of law places the loss on the bank, it should fall on the company whose agent seems to have played it false, and not on the innocent party whose check was the mere instrument or conduit by and through which Mrs. Ellis paid for the work on its completion.

When the case was first here (*Chamberlin Co. v. Bank*, 98 Kan. 611, 160 Pac. 1138), it was on an objection to testimony under the petition which alleged that Haskell had no authority to indorse the check and that the indorsement was a forgery, and that he had no authority to make collection on the plaintiff's account. The bank demurred, and after its demurrer was overruled, it answered by general denial. After the opening statements of counsel in harmony with the pleadings, an objection to the introduction of testimony was sustained. The general rules of the law merchant set forth in that opinion are correct, but as already indicated they do not solve the problem now presented.

This time in the court below an agreed statement of facts was offered in evidence, which covered nothing necessary to be noticed now. The company relies on *Vacuum Cleaner Co. v. Bank*, 101 Kan. 726, 168 Pac. 870, as decisive of this case. But there we read:

"It is said that Berryhill was held out as the plaintiff's agent, and that authority to indorse the plaintiff's name on the check should be implied. The evidence was that Berryhill installed a vacuum cleaner in the

6—107 Kan.

home of C. E. Roth—made the contract, did the work, and collected the price—and the defendant knew these facts. The evidence further disclosed, however, that Berryhill had made a contract in his own name to sell Roth a vacuum cleaner not manufactured by the plaintiff. The plaintiff had a machine which had been used for purposes of demonstration. The plaintiff sold this machine at a discount to Berryhill, who used it to fill his contract with Roth. Consequently Berryhill did not act for the plaintiff in any capacity in the Roth transaction." (p. 727.)

True, it was further said that even if Berryhill had the authority to install and take checks for the price, the authority to indorse could not be implied, reference being made to 2 C. J. 636. In this text it is said that the most comprehensive grant in general terms of power to an agent does not include authority to indorse commercial paper—

"Unless the exercise of such power is so necessary to the accomplishment of the agency that such intent of the principal must be presumed in order to make the power effectual."

Also, that mere authority to receive negotiable paper carries with it no power to indorse—

"As the receipt of the paper accomplishes the purpose of the agency, and hence exhausts the power. . . ." (p. 637.)

Following this the author says:

"Much must depend upon the position of the agent and the circumstances of the case, and the agent's authority to execute or indorse commercial paper will be presumed whenever such power is reasonably necessary to effectuate the main object of the agency." (p. 638.)

This is not a case involving the mere question of an agent's authority to indorse commercial paper for his principal, because the agent's power would ordinarily include no such authority. But here the company sent its man out to a distant state with full authority to contract for weather strips, to furnish the material and do the work, or to use the material and do the work, and sent him with a contract which expressly provided for cash payment upon completion of the work. It was not the duty of Mrs. Ellis to address a letter to the company's home office to know where it desired her to make this payment. The only way she knew the company was through its agent contracting to do what she had contracted to have done. Certainly, on completion of the work, had she refused to pay him cash, he could have treated such refusal as a determination to breach the contract she had made. On the contrary, had she promptly paid him the cash there could be no

question that her relations with the company had thereby ended. For all practical purposes in the vicinity of Pleasanton, Haskell was the company. Now, instead of handing him the cash as she might have done and which he might have received and thereby bound his company, she handed this agent her check—an order to pay some of her money deposited there —on the local bank where he had frequently called and where it was known he was handling this business in that vicinity. By simply taking the check to the bank and receiving cash on it he was in fact receiving "cash on completion of the work," the indorsement being a mere incident to and instrument for completing this simple operation.

The bank was fully justified in assuming that a reputable company would not clothe its agent with authority to go to a state far distant from its residence to procure customers to sign a formal contract authorizing him to use the material belonging to it and do the work agreed upon to be paid for in cash on completion, without expecting him to collect such cash in the absence of any agreement or restriction as to its payment to any other person or at any other place. The mere use of the check as a ready means of collecting cash is so incidental and so natural that for the bank to have refused payment would have amounted to an imputation upon the commercial sanity or honesty of the concern which sent out its agent thus clothed.

This doctrine suggests no new rule of law. In *Hodgson v. Barrett,* 33 Ohio St. 63, it was held:

"Where payment is made by a check, drawn by the purchaser on his banker, this is a mere mode of making a cash payment, and not the acceptance of a security." (Syl. ¶ 3.)

In *National Bank v. Old Town Bank,* 112 Fed. 726, the legatees and distributees of an estate employed a Chicago lawyer to represent them in the administration and settlement, and to receive the amounts coming to them as distributees. He retained a law firm to assist him, and the executors paid to this firm certain specified legacies which were remitted to this employee and by him paid to the persons entitled. Later, he procured receipts and forwarded them to the firm who delivered them to the executors. The firm deducted the total amounts of the fee charged, drew their checks to the employee for his portion and drew checks for amounts due certain distributees

payable to their order and forwarded such checks to the employee, who indorsed them in the name of his client as attorney and deposited them in the bank to his credit. The bank forwarded them for collection to the defendant, which collected through the clearing house, and subsequently trouble arose between the parties involving the effect of this indorsement. It was held by the circuit court of appeals of the seventh circuit that the attorney, being responsible to his client for the money collected, and being the only person authorized by them to receive, had power as attorney to indorse the checks for collection and to collect them. In the opinion the court said, quoting from Mr. Mechem:

"'Authority to do a given act carries with it an implied authority to do those things which are necessary in order to accomplish the main end, and what is necessary must be determined in many cases by reference to the particular facts.'" (p. 728.)

*Sprague & another v. Gillett & another*, 9 Met. (50 Mass.) 91, involved this question: The joint owners of part of a vessel authorized another owner to purchase their proportion of the outfit for the vessel, but did not furnish him with funds. He bought on credit of six months, and gave a note as agent of these joint owners who, not knowing that he had purchased on credit, paid him the amount of the purchase. The seller sued the joint owners and was held entitled to recover. In the opinion it was said:

"That he was not in terms expressly so authorized is admitted; but he was authorized to make the purchase, and no funds were advanced to him, to enable him to purchase for cash. This, by implication, unquestionably authorized him to make the purchase on the defendants' credit. When an agent is authorized to do an act for his employer, all the means necessary for the accomplishment of the act are impliedly included in the authority, unless the agent be in some particular expressly restricted." (p. 92.)

The supreme court of Virginia, in *Whitten v. Bank of Fincastle*, 100 Va. 546, held that—

"The power to make or endorse negotiable instruments may be implied as a necessary incident of powers expressly conferred. Where an entire business is placed under the management of an agent, the authority of the agent is presumed to be commensurate with the necessities of the situation. He has implied authority to do whatever is ordinarily incident to the conduct of such business, whatever is necessary to the efficient execution of the duties, or whatever is customary in a particular trade." (Syl. ¶ 3.)

One of the executors of an estate had been given a power of attorney by his mother clothing him with authority "for the transaction generally and particularly of all my business.", (p. 548.)   Acting under this he executed the promissory note sued on which was presented to the defendant bank, and by it discounted and the proceeds passed to the credit of the mother. The lower court held the estate of the executor liable, and this ruling was reversed by the supreme court, which remanded the cause, saying—

"The court should then enquire more particularly into the circumstances attending the execution of the note in question, and the disposition that was made of its proceeds.   If it was passed to the credit of M. M. Godwin and used in the purchase of any part of the estates in her possession at the time of her death, it is but proper that the bank should be allowed to appropriate to its debt whatever was purchased with its proceeds.   Enquiry should also be made into the power of James Godwin to bind the estate of M. M. Godwin by a negotiable note.   The power to make or endorse negotiable instruments may be implied as a necessary incident of powers expressly conferred."   (p. 550.)   .

This decision was approved and followed by the supreme court of New York in *Porges v. United States Mortgage & Trust Co.*, 135 App. Div. 484, holding that under a power of attorney to sell or dispose of certain property, to accept in payment cash or other property, to sell the property so received, and with the proceeds pay off incumbrances, the agent could convert a check received for the property into cash by the indorsement thereof, though the check was made payable to the principal.   In the opinion it was said:

"It is true that the power did not in express terms authorize Hoyt to indorse checks drawn to plaintiff's order, but this we think was necessarily involved.   .   .   .   The check was simply a token representing cash.   Hoyt had authority to use the cash derived from the transaction, and we think had likewise authority to convert the check into cash, which was the practical effect of depositing it."   (p. 490.)

It is not intended to impair in the least the strength of the rule that a bank must know at its peril that the one to whom it pays indorsed checks had authority to indorse them.   (3 R. C. L. 542, § 171.)   It is meant only that the bank in this case had sufficient reason to regard the agent as duly authorized, and that the authority with which his employer had actually clothed him carried the authority to collect cash, and the im-

plied authority to do so by means of the check which he received for his company.

The judgment is reversed, and the cause is remanded with directions to enter judgment for the defendant..