G. F. HILLSTROM, Appellee, v. FARMERS INCORPORATED SOCIETY et al., Appellants.

**RECEIVERS: Powers—Measure of Right.** The interest of a receiver
1  in property is measured by the interest which the debtor had in the property at the time the receiver was appointed.

**PRINCIPAL AND AGENT: Authority of Agent—Payment by Check.**
2  An agent authorized to sell is, as a general rule, authorized to receive payment in cash, and not otherwise.

*Appeal from Hancock District Court.*—J. J. CLARK, Judge.

JANUARY 8, 1924.

ACTION by an assignee of a farm lease who seeks to recover the sale price of certain corn from the defendant elevator company, which purchased the landlord's share of the grain. The receiver of the subsequent purchaser of the land intervened, claiming the grain or its proceeds as such receiver. The opinion states the facts. The trial court directed a verdict for the plaintiff and entered judgment accordingly. Defendant and the intervener appeal.—*Affirmed.*

*Thompson, Loth & Lowe,* for appellants.

*E. H. Johnson,* for appellee.

DE GRAFF, J.—The sustaining of plaintiff's motion for a directed verdict is the primary basis for the instant appeal. The interests of plaintiff, as an assignee of a farm lease, are in conflict with those of the defendant Farmers Incorporated Society, as purchaser of the grain in question from the tenant, and the intervener Olson, as receiver of the present title holder, who purchased the farm from the lessor.

The facts disclose that one Thelander, as owner, leased by written contract a certain farm for the year beginning March 1, 1921, to Andrew Christensen. This lease was subsequently assigned by Thelander to plaintiff Hillstrom, and the farm itself was sold and the title passed by warranty deed to one Fuchs, whom the receiver represents in this action. The lease provided that the landlord should receive half of the corn, to be divided and delivered at the town of Woden on the demand of the landlord. It is also shown that the plaintiff was the agent of Thelander in negotiating and consummating the sale of the land to Fuchs. Plaintiff received the assignment of the lease as compensation for his services in this particular. The warranty deed is without reservations.

Two primary propositions are presented: First, does the deed have priority over the assignment? Second, did the giving of the check in payment of the corn to the tenant by the elevator company constitute payment by the elevator company, relieving it from further liability?

Of these in their order. The undisputed evidence of the parties to the assignment, Thelander and Hillstrom, is to the effect that the assignment was completed and delivered to Hillstrom by Thelander on September 29, 1921, and at that time the sale of the land to Fuchs by Thelander was not completed by the delivery of the deed. Upon a careful review of the evidence, we conclude that the said assignment was made prior to the delivery of the deed to Fuchs. The evidence shows that the lease in question was never made a part of the consideration of the land deal to Fuchs, but the latter did receive the lease of the said farm for the year following the instant lease. A receiver has no other or greater interest than the debtor or estate had in the property at the time of his appointment. The burden was on the

1. RECEIVERS: powers: measure of right.

intervener-receiver to prove that he was entitled to this corn, or its proceeds, and this he failed to prove. We are satisfied that the verdict against the intervener in this respect should be affirmed.

We now pass to the second proposition, which involves the tenant's authority to receive payment by check from the elevator company for the corn sold. The check in question bears date of January 17, 1922. Plaintiff wrote a letter to the tenant Christensen on January 9, 1922, in which he said:

2. PRINCIPAL AND AGENT: authority of agent: payment by check.

"Have been instructed by the owner of the farm formerly owned by Thelander to have the rent share of corn shelled and sold at the very best price you are able to get."

Acting on this instruction, the tenant hauled the corn to the defendant elevator company, and sold it. Clearly, this gave the tenant the right to receive payment, but the material question is, What manner of payment? At this time, the tenant was not the agent of Thelander, whose interest in the corn had passed by assignment to Hillstrom; neither was he the agent of Fuchs, the grantee. Had the elevator company paid the tenant cash for said corn, it would be immaterial what the tenant did with the money, as far as the elevator company is concerned. The latter acted at its peril when it paid Christensen in any other form than cash. True, the tenant took the check and deposited it for the landlord at the bank; but the landlord was not entitled to the proceeds, nor does he at this time claim the proceeds. It is also shown that the check was paid by the bank on which it was drawn by the elevator company, and, so far as the record discloses, the money is still in the custody of the Woden Bank, which is not a party to this action; and consequently the fund was not in the custody or the jurisdiction of the trial court. Thelander did not indorse the check, but it was indorsed by the cashier of the Woden Bank, who, it is shown, knew at that time that Hillstrom was the assignee of the lease. The bank was not the agent of the plaintiff, nor, under the evidence, of Thelander at this time. The evidence further shows that the check was made out by the manager of the elevator company to Thelander in response to a question asked by the manager of the tenant as to "who the landlord was,—who he made

the lease out to." The tenant answered, "Thelander," and also told the manager that he didn't know who owned the farm at that time, and that "it was kind of a mixed-up affair." Thelander never saw the check, never authorized anyone to indorse it or cash it, and never knew for what the check was given, except as he heard it in the court room. The tenant himself never said anything to Thelander about delivering the corn to the elevator and receiving a check therefor. It must be conceded that the tenant was an agent in possession of the corn and authorized to sell it. Had he been paid in cash or by check payable to himself, a different situation would arise. The cases relied upon by appellant involve payments where the checks were made out payable to the agent, and the agent cashed them or deposited them for and on behalf of his principal. The general rule is that an agent authorized to sell is authorized to receive payment in cash, and not otherwise. *Western Securities Co. v. Atlee,* 168 Iowa 650. The circumstances of the case control. If payment is made to one agent, who, instead of turning it directly to his principal, gives it to the principal's agent, the payor is discharged. *Bissell v. Spring,* 179 Iowa 1005. If it may be said that the check given in payment is the equivalent of money, then the payor is absolved. *Harbach v. Colvin,* 73 Iowa 638; *Harrison v. Legore,* 109 Iowa 618; *Griffin v. Erskine,* 131 Iowa 444. See, also, *Chamberlin Metal Weatherstrip Co. v. Bank of Pleasanton,* 107 Kans. 79 (190 Pac. 742); *Potter v. Sager,* 184 App. Div. 327 (171 N. Y. Supp. 438); *McFadden v. Follrath,* 114 Minn. 85 (130 N. W. 542); *First Nat. Bank v. Henry,* 30 N. D. 324 (152 N. W. 668).

We conclude, therefore, that, under the facts of the instant case, the elevator company was not discharged of its obligation in relation to the purchase of the corn in the giving of its check in payment; and, as the proceeds of the check now in the hands of the bank and unclaimed are not within the jurisdiction of this court, the equities of the situation in this particular must await a later solution. The judgment entered by the trial court is therefore—*Affirmed.*

ARTHUR, C. J., STEVENS and VERMILION, JJ., concur.