Maurice Wahl, J.
In this non jury action findings of fact and conclusions of law were waived. The complaint consists of two causes of action. In the first cause of action plaintiff seeks a recovery against the Lafayette National Bank, hereinafter referred to as “ Lafayette ”. In the second cause of *519 action plaintiff alleges a claim against one Ragozzino. The actions were severed as to the individual defendant.
In the first cause of action which is now before me, plaintiff seeks to recover from Lafayette, as a guarantor of the indorsement of Alfonse Farruggio, a payee on a check in the sum of $1,596.87 drawn by plaintiff and presented for payment to the plaintiff by Lafayette on the ground that the payee’s indorsement on said check was forged and that Lafayette had no right to receive the proceeds of the check and is liable to the plaintiff for the amount it received from the plaintiff.
On the trial plaintiff’s representative testified that the check was issued following at least two meetings with the person using the name Joseph Alessandrino, whose real name is believed to be Amos Ragozzino. This person purported to represent Farruggio in applying- for a loan against an automobile. There were presented to plaintiff bank a loan application, a promissory note, and a chattel mortgage, all purporting to bear Farruggio’s signature. The loan was approved, and the check in suit was handed to “ Allessandrino ” for delivery to Farruggio. Plaintiff’s representative knew both of those parties, and had known them to be associated in the used-car business.
Prior to the issuance of this check, Farruggio had opened an account with defendant Lafayette National Bank under the name of Enterprise Auto Sales, a trade name for which he filed a certificate as sole proprietor. The check in suit, however, was not deposited in said account, but was cashed at defendant bank. Mr. Vance, then the manager of the branch of defendant bank in which this account was maintained, testified that he had personally approved the cashing of the check in . suit, in the physical presence of Farruggio and at his specific request. He had a definite recollection of the transaction because he had found it advisable to watch the particular account very closely.
Although the questioned indorsement shows many similarities to acknowledged specimens of Farruggio’s signature, Farruggio testified that he did not indorse the check, and that he did not sign the application, the note or the chattel mortgage. He does admit, however, (1) that he adopted the trade name of Enterprise Auto Sales, and opened the bank account with defendant bank in that name, solely for the convenience of Ragozzino, otherwise known as Alessandrino; (2) that he knew that Ragozzino was using an assumed name because of some prior trouble, and would have had difficulty getting a license as a used-car dealer under his own name; (3) that he took no part in the business of Enterprise Auto Sales, but left both *520 the business and the bank account entirely under the supervision of Ragozzino; (4) that he received by mail from plaintiff a “ monthly-payment ” booklet shortly after the making of the loan; (5) that he made no protest to the bank, but merely spoke to Ragozzino, who admitted using Farruggio’s name to get the loan, and promised to pay the plaintiff bank direct; (6) that in April, 1950 he was sued by plaintiff bank on the promissory note, and still made no claim of forgery, but permitted judgment by default; (7) that when examined in supplementary proceedings he promised to make weekly payments on the judgment, but then for the first time notified plaintiff bank of his claim of forgery; (8) that he has at no time attempted to cure his default in answering the suit instituted by plaintiff bank in 1950.
Plaintiff bank admits receipt of payments against the loan, aggregating $430. Farruggio denies having made any payments, but stated that they must have been made by Ragozzino. One payment was by check for $71 purported to have been drawn by Farruggio against the account of Enterprise Auto Sales with defendant bank. Farruggio denies having signed the check, but admits that he never notified defendant bank of any claim of forgery as to this check.
The plaintiff first gave notice to defendant of a claim of forgery of indorsement of the check in February, 1954. This action was instituted in May, 1955 shortly before the Statute of Limitations would have become effective.
Plaintiff’s argument seems to turn entirely on the question of the handwriting of the indorsement of Farruggio. A comparison of the handwriting indicates a strong probability that the indorsement was actually written by Farruggio and indeed the plaintiff’s witness, Gangi, stated in response to a question from the court that he believed it was Farruggio’s signature. However, my decision does not depend on this point alone.
Under section 116 of the Negotiable Instruments Law, and under section 350-c, the guarantor of an indorsement makes no specific guarantee with respect to handwriting. Its guarantee is with respect to the validity of the indorsement — or, as in section 350-c, ‘‘ the genuineness of and the authority to make prior indorsements ”.
For an indorsement to be valid, it is not necessary that it be made in the handwriting of the payee. (Negotiable Instruments Law, § 38; Commercial Bank of Buffalo v. Warren, 15 N. Y. 577; Guaranty Trust Co. v. Manhattan Co., 183 App. Div. 586, 587.)
*521 Frequently an indorsement is made by rubber stamp, or is affixed by the hand of someone other than the payee. It is the authority to indorse, and not the physical act of indorsement, that determines the validity of such indorsement.
An authorization to sign a document may be implied from surrounding circumstances. (Collins v. Widger, 231 App. Div. 321, 323; Borges v. United States Mtge. & Trust Co., 135 App. Div., 484, 487, revd. on other grounds, 203 N. Y. 181.)
A check may, in fact, be transferred without written indorsement, and a guarantee of prior indorsements, or of lack thereof, imposes no liability on the guarantor where the transfer is valid. (Negotiable Instruments Law, § 79; Gilbert v. Chase Nat. Bank, 108 F. Supp. 229; Sundail Constr. Co. v. Liberty Bank of Buffalo, 249 App. Div. 260; Osborn v. Gheen, 16 D. C. Rep. 189, affd. 136 U. S. 646.)
The act of an agent in writing an indorsement on the check may be ratified exactly as any other act of purported agency. (Commercial Bank of Buffalo v. Warren, 15 N. Y. 577, supra.)
If ever there was a duty to speak, it rested with Farruggio in connection with this transaction, if in fact he had not been a party to it. By his silence, he obtained for his associate the continued use of the proceeds of the loan. Under all the circumstances it is extremely doubtful that Farruggio could have defended successfully the action of Manufacturers Trust on the note, even if he had elected to plead forgery.
In short, on a bad loan, Manufacturers Trust holds a judgment, perhaps, equally bad. However, it is entitled to this and nothing more.
It now seeks to transfer the loss to the defendant bank after all these years on information which was apparently given to it solely as an afterthought by the judgment debtor who evidenced a propensity as a schemer.
Judgment for the defendant on the merits.