GUARANTY TRUST COMPANY OF NEW YORK, as Substituted Trustee of the Estate of S. H. P. PELL & COMPANY, Bankrupts, Respondent, *v.* THE MANHATTAN COMPANY, Appellant.

First Department, April 19, 1918.

**Bills and notes — stockbrokers — check of bankrupt paid on forged indorsements — burden of proof to show that alleged agent of bankrupt was authorized to indorse the check.**

Where after accounts had been stated between a stockbrokerage firm and the defendant bank the trustee in bankruptcy of the brokers brings an action to recover the amount of two checks made by the bankrupt and paid by defendant upon alleged false indorsements, it is incumbent upon the plaintiff, in order to open the account, to show fraud or mistake, and the burden of proof is upon him to show that one who handled a speculative account for the payee, indorsed said checks and applied the proceeds in adjustment of the accounts of other customers, was authorized to indorse said checks.

Where an agent claims authority to indorse the name of his principal on negotiable instruments, the clearest kind of proof should be required as to the scope and purposes of the agency.

Evidence considered, and *held*, that an order setting aside a verdict in favor of defendant, on the ground that the one who indorsed the checks had no authority so to do, under section 38 of the Negotiable Instruments Law, which declares that a signature of any party may be made by a duly authorized agent, will be affirmed.

APPEAL by the defendant, The Manhattan Company, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 29th day of May, 1917, setting aside the

verdict of a jury in defendant's favor and granting a new trial.

*Justus Sheffield* of counsel [*John Quinn*, attorney], for the appellant.

*Franklin H. Mills* of counsel [*Frank M. Patterson*, attorney], for the respondent.

SHEARN, J.:

On December 3, 1913, Pell & Co., then a New York stock brokerage firm, since bankrupt and represented by plaintiff as substituted trustee, drew its check for $88.75 upon the defendant, its bank, to the order of C. G. Kershaw of Birmingham, Ala., who appeared on its books as a customer, and sent the check in a letter dated December 2, 1913, in care of R. E. Oliver, the letter stating that the check was " the balance of your account in full to date." Oliver was the Alabama representative of F. H. Barrett of Augusta, Ga., who was at that time the southern representative of Pell & Co., and Oliver was the man who handled a speculative account of Kershaw, executed through Pell & Co. Oliver indorsed Kershaw's name on the check, then indorsed his own name on the check, deposited it to his account and applied the proceeds in the adjustment of accounts of other customers of the agency who were trading through Pell & Co. but whose trades, unknown to Pell & Co., were all carried by Pell & Co. in Kershaw's account as No. 10. On April 2, 1914, the transaction was repeated in connection with a check for $3,750 drawn by Pell & Co. to the order of Kershaw and forwarded in care of Oliver. On November 25, 1914, Pell & Co. were adjudged bankrupts. The check for $88.75 was charged in Pell & Co.'s account by the defendant bank in its balance of February 18, 1914, and the check for $3,750 was charged in the account balanced May 1, 1914. This action was begun on July 16, 1915, to recover the amount of the two checks, paid by the defendant on the alleged forged indorsements. As accounts had been stated between Pell & Co. and the bank, it was incumbent upon the plaintiff, in order to open the account, to show fraud or mistake, and, therefore, the burden of proof was upon the plaintiff to show Oliver's lack of authority to indorse the checks. (*Shipman* v. *Bank of State of New*

*York*, 126 N. Y. 318.) The plaintiff called Kershaw as a witness and he testified that he had never authorized Oliver to indorse any checks. On behalf of the defendant, the deposition of Oliver was in part read in evidence and, in such part thereof as was received, Oliver testified to an interview with Kershaw in which, he claimed, the authority to indorse was given. His testimony was as follows: " The specific occasion was when Mr. Kershaw came into my office and advised me that he was going to be absent from the city, and requested me to look out for his interests and keep him posted. He gave me his address. I then told him that I had some money in his account in New York, and would like to get it. He said to me, ' all right, go ahead and get it.' This is, of course, the substance of what was said. I do not attempt to repeat the exact words; but that was the substance. I had no further conversation with him relative to that particular matter, or that feature of the account standing in his name. Miss Nannye M. Ellis now Mrs. Nannye Waters, was present when Mr. Kershaw authorized me, as above stated. I cannot recall the exact date of the conversation above referred to. I know that it was before I collected the amounts due to the other accounts which we were carrying in Kershaw's name in New York." Some corroboration of this testimony was given by Mrs. Waters, a stenographer present at the interview, but her testimony is not of strong probative character because so much of it consists of conclusions.

Upon this state of the record the court submitted the case to the jury upon the issue as to whether Kershaw had authorized Oliver to indorse his name to these checks and apply the proceeds to other purposes than those of the payee. The jury determined this issue in favor of the defendant and the court set the verdict aside, evidently upon the ground that Oliver's authority to indorse had not been sufficiently established.

It first becomes necessary to consider what authorization is sufficient to warrant one in indorsing the name of another upon a check. The Negotiable Instruments Law (Consol. Laws, chap. 38 [Laws of 1909, chap. 43], § 38) reads as follows:

" § 38. *Signature by agent; authority; how shown.* The

signature of any party may be made by a duly authorized agent. No particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

Counsel for the respondent, relying upon the rule that one person can be authorized to indorse negotiable paper for one only by express or direct authority, argues in effect that this means that specific direction or authority must be given for the indorsement of each particular instrument, describing the particular instrument with certainty and particularity, and he even goes so far as to claim that the date and amount of the particular instrument should be specified. This claim is based upon *Porges* v. *U. S. Mortgage & Trust Co.* (203 N. Y. 181), but, in my judgment, that case does not warrant any such inference. Rightly considered, it is quite to the contrary. In that case the court was dealing with a power of attorney, which plainly failed to give the attorney any express authority to indorse. Referring to such power, the court said: " If he possessed it, it inhered in the authority expressly given to do other acts, and this it did not do unless it was reasonably necessary to effectuate the objects of the agency, and, therefore, within the intent of the plaintiff; and it must appear clearly that the accomplishment of the acts expressly authorized required the exercise of the authority to indorse." The inference to be drawn from this, as it seems to me, is that where agency is established, and the indorsement of the principal's checks by the agent is reasonably necessary to effectuate the objects of the agency, the power to indorse inheres in the authority expressly given to do other acts; and the fact that the act of indorsement is clearly required to accomplish the acts expressly authorized is evidence that the power to indorse was within the scope of the agency and the intent of the principal. In other words, the question is, as the Negotiable Instruments Law plainly shows, what is the scope and purpose of the agency? Precisely the same rule indicated in the *Porges* case is laid down in Corpus Juris under the article " Agency," as follows:

" (2) *When authority implied.* The rule of strict construction adopted in the case of the execution by an agent of negotiable instruments is not to be pursued to the extent

of defeating, by technical interpretation, the obvious intent of the principal as gathered from a reasonable interpretation of the instrument appointing the agent. Hence, if the agent's act in that regard be within such intent it will bind his principal. Much must depend upon the position of the agent and the circumstances of the case, and the agent's authority to execute or indorse commercial paper will be presumed whenever such power is reasonably necessary to effectuate the main object of the agency." (2 C. J. 638.)

In the case at bar, however, the difficulty with the defendant's position is that the proof is so vague and unsatisfactory as to the scope, purpose and extent of the agency. While, according to the testimony of Oliver, he was expressly authorized to " get " the money standing in Kershaw's account with Pell & Co., there is no satisfactory testimony showing what he was authorized to do with the money when he obtained it. Kershaw would have had no cause of complaint if the money collected by Oliver on these checks had been turned over to him; his grievance lay in the fact that the proceeds were turned over to the use of others. Where the agent claims authority to indorse on negotiable instruments the name of his principal, the clearest kind of proof should be required showing the scope and purpose of the agency. Upon the proof received in evidence in this case the court was fully warranted in setting aside the verdict. But it was not the defendant's fault that proof of the scope and purpose of the agency was not more ample and satisfactory. Defendant's counsel earnestly sought to introduce competent evidence to show that account No. 10 standing in the name of Kershaw on the books of Pell & Co. represented not only Kershaw's trades but the trades of a number of other persons, all of whom, including Kershaw, well knew and understood that the debit and credit balance of the account did not represent any individual account but the operations of all, of which a separate and correct record was kept in the books of the Birmingham agency. Defendant further endeavored to show that Kershaw had no equity whatever in this account but was a heavy loser in his trades. The inference deducible from this proof was that Oliver was expressly authorized to merge Kershaw's trades with others in this account, to keep an accurate record of the

profit and loss of each individual trading therein, to collect from each trader his losses and thus maintain the account intact, and to distribute to each trader in the account, out of the common fund, his individual profits. Upon such a state of facts, the express authorization to " get " the money in the account, standing in Kershaw's name, might readily support authority in the agent to draw on the account in Kershaw's name or to cash Kershaw's checks and make the proper distribution of the proceeds. All of this evidence was improperly excluded.

The order setting aside the verdict is affirmed, with costs.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concurred.

Order affirmed, with costs.