COAL AND IRON NATIONAL BANK OF NEW YORK, Plaintiff, *v.*
THOMAS G. MCCLATCHEY.

City Court of the City of New York, January, 1923.

**Banks and banking — principal and agent — agent's authority to indorse checks for deposit — checks cashed by agent and funds embezzled — when bank cannot recover from an innocent purchaser for value the amount of the checks deposited by him to his credit.**

An agent of a corporation had authority to indorse checks received by it in the regular course of business and to deposit them to its credit in a designated bank. This he usually did with the use of a rubber stamp. The checks in suit were indorsed in blank either by the rubber stamp or in the handwriting of the agent. They were cashed by defendant, who deposited them to his credit in plaintiff bank. The agent misappropriated the funds. The bank sued defendant upon the checks and recovered verdicts. Defendant moves to set the verdicts aside. Plaintiff claims that the agent's authority was restricted to indorsements to the order of a designated bank for deposit and that the indorsements were forgeries. Defendant contends that the agent had authority to indorse in blank and among other things to deposit the checks in a designated bank; that he failed to carry out his instructions, cashed the checks and embezzled the proceeds, and that defendant is an innocent purchaser for value without notice, and that the loss should fall upon the agent's principal. In setting aside the verdict, *held*, that the agent had authority to indorse the checks in blank; that he failed to carry out his instructions to deposit the checks; that he diverted them and embezzled the proceeds; that defendant acquired title to the checks.

MOTIONS to set aside verdicts for a new trial.

*Albert Falck*, for plaintiff.

*McCall & O'Connell* (*H. Randolph Guggenheimer*, of counsel), for defendant.

LA FETRA, J. This is a motion to set aside three verdicts in favor of plaintiff in different actions growing out of the same state of facts. The actions were tried together, but separate verdicts rendered in each. One J. J. Kehoe was in the lighterage business and was succeeded by J. J. Kehoe, Inc. The latter's agent had authority to indorse checks received by it in the regular course of its business and to deposit them to the credit of the company in a designated bank. This he usually did by using two rubber stamps in case the checks were payable to J. J. Kehoe individually, as they often were and by using one of them if to the order of the company. All the indorsements in suit were in blank, were either made by the stamps or were in the handwriting of the agent. In one or the other form he delivered these checks to the defendant from time to time, who cashed them. The defendant in due course deposited

them to his credit in the plaintiff's bank, has received the benefit of their full face value and now refuses to return the cash represented by the credit. The plaintiff is now the owner and holder of them. After receiving the cash from the defendant the company's agent appropriated the same to his own uses. The plaintiff claims the agent had no authority to make the aforesaid indorsements in those forms, but was restricted to indorsements to the order of a designated bank for deposit; that the indorsements are forgeries; that the checks lost their character as negotiable instruments and neither the defendant, nor any one through him, acquired title to them or their proceeds. The defendant contends the agent had authority to indorse them in blank and in the form of those in suit, but with instructions, among other things, to deposit them in a designated bank; that he failed to carry out those instructions, cashed them as aforesaid, and embezzled the proceeds; that he is an innocent purchaser for value without notice of any infirmity; that he acquired title and the loss by embezzlement should fall upon the company (the agent's principal). If the indorsements were forged the verdicts should stand; if the indorsements were authorized by the company the verdicts should be reversed, as then the checks were diverted and the proceeds appropriated by the agent. The principles of law involved are well illustrated in the case of *Central National Bank* v. *North River Bank*, 44 Hun, 114, where the checks were stolen and the indorsements were clearly forgeries; in that of *Standard S. S. Co.* v. *Corn Exchange Bank*, 220 N. Y. 478, where the agent's authority was restricted to indorse to the order of a designated bank for deposit; in that of *McCabe Hanger Mfg. Co.* v. *Chelsea Ex. Bank*, 183 App. Div. 441, where the indorsement was authorized, the check diverted and the proceeds appropriated by the agent. The distinction to be drawn between the *McCabe Hanger Mfg. Co.* case and that of the *Standard Steam Specialty Co.* is clearly enunciated by Page, J., writing the opinion, in these words: " One Nohel, the secretary and bookkeeper of the plaintiff, had authority to make up the bank deposits and to stamp the name of the plaintiff upon the back of checks for deposit and deposit them in the bank to the credit of plaintiff. In this instance he stamped the plaintiff's name on the back of the check, wrote his name, to which he added the word ' secretary,' and cashed the check with one Berger. Berger indorsed the check and deposited the same with the defendant, with whom he had a regular deposit account. The defendant collected the check, placed the proceeds to the credit of Berger, who about three months thereafter withdrew all his money from the defendant and closed his account. Four months after Berger had closed his account with the defendant the plaintiff notified

the defendant that it claimed the indorsement was a forgery and demanded payment of the amount of the check. There is no evidence in this case that the rubber stamp used by Nohel in the instant case was not the stamp which he was authorized to use and regularly used when indorsing checks for deposit. Nohel had authority to indorse the check in the manner in which he did; the indorsement, therefore, was not a forgery. He had no power to do anything with the check except to deposit it in the bank to the credit of the plaintiff. His unauthorized diversion of the check did not make his original indorsement a forgery, nor render a subsequent holder liable who took it without notice of the diversion. * * * In *Standard Steam Specialty Company* v. *Corn Exchange Bank* (220 N. Y. 478) the stenographer was only authorized to stamp upon the back of the checks with a rubber stamp which read: ' Pay to the order of Greenwich Bank. The Standard Specialty Co.,' to which she could add the name and title of the treasurer; she wrote an indorsement, ' Standard Steam Specialty Company, Percy H. Pinder, Treasurer,' and cashed the checks. The court held that her authority was limited to use the particular stamp and that she had no authority to indorse the checks in blank; hence the indorsement was a forgery." Further illustrative of the point in question is the opinion of Houghton, J., in *Cluett* v. *Couture,* 140 App. Div. 830; affd., 206 N. Y. 668, where he says: " While plaintiffs granted full power to their agent to indorse checks in blank by writing their firm name on the back without any restrictive words, they restricted the use which he should make of the check after he had indorsed it, by requiring him to deposit it in the bank to their credit. Any departure by the agent from such authority and instructions was a mere diverting of a negotiable instrument from an authorized use, in which case it is not disputed the loss, if any, must fall on the principals of the agent guilty of the diversion rather than on a *bona fide* holder for value without notice." To like effect is *Salen* v. *Bank of the State of New York,* 110 App. Div. 636. In the *Central National Bank Case, supra,* where the checks were stolen, the court said (p. 115): " The defendant, by presenting these checks for payment, asserted its ownership of the same, or its right to collect, and the plaintiff in making the payment had the right to rely upon this assertion of right or title. It subsequently appearing that these checks had been stolen from the payee thereof, the true owner, and that they were never indorsed by it; it seems too clear for argument that the plaintiff had a right to recover back the money which it had been induced to pay by the false assertion of ownership or right to collect made by the defendant. The defendant, in

presenting this check for payment, guaranteed the indorsement, and it is immaterial whether the plaintiff had actually paid the money again to the payee of the check or not; the liability to pay existed and the defendant has no right to retain money obtained by the false pretense that it was entitled to receive the money." Later in *Oriental Bank* v. *Gallo*, 112 App. Div. 360; affd., 188 N. Y. 610, the court said: " The right of the plaintiff to recover under the circumstances is undoubted. The defendant's indorsement was a warranty that the prior indorsement was genuine, and upon discovery of the forgery he became immediately liable to make good the amount he had received." In *N. Y. Produce Exchange Bank* v. *Twelfth Ward Bank*, 135 App. Div. 52, 53, Scott, J., writing the opinion, said: " Under the authorities this was equivalent to a guaranty of the genuineness of the whole of the instrument, including the indorsements, excepting only the signature of the drawer, and in case of forgery rendered the defendant liable *prima facie* to refund to plaintiff the amount received on the check on the ground that the payment had been made under a mistake of fact." Following these cases came *Stein* v. *Empire Trust Co.*, 148 App. Div. 850; *Geering* v. *Metropolitan Bank*, 170 id. 751, and *Egner* v. *Corn Exchange Bank*, 42 Misc. Rep. 552. See, also, Neg. Inst. Law, §§ 115, 116. In the *Standard Steam Specialty Co.* case, Pound, J., aptly sums up the doctrines in these words: " One authorized to make a restrictive indorsement is not authorized to make a general indorsement." The plaintiff failed to present evidence of the form of the rubber stamps which restricted the agent's authority to indorse the checks to the order of the designated banks for deposit. The evidence is only susceptible of one interpretation — that the witnesses meant to imply that the rubber stamps were those for indorsements in blank, but their use was restricted to indorsements for deposit. Had stamps other than those upon the checks in evidence, " J. J. Kehoe " and " J. J. Kehoe, Inc.," been used to make deposits in the designated banks, the evidence thereof surely could have been easily produced, as the company had been making deposits for some time in the banks in question. After carefully considering the testimony and exhibits I am of the opinion the company authorized its agent to indorse the checks in blank with instructions to deposit them in the designated banks, but he failed to carry out the instructions, diverted them and embezzled the proceeds. In the circumstances the defendant acquired title, the verdicts should be set aside and new trials granted, with costs to abide the event.

Ordered accordingly.