LANDAU GROCERY COMPANY, A CORPORATION, RESPONDENT, v. BANK OF POTOSI, A CORPORATION, APPELLANT.*—26 S. W. (2d) 794.

St. Louis Court of Appeals. Opinion filed April 8, 1930.

*Corpus Juris-Cyc References: Agency, 2CJ, section 70, p. 461, n. 8; section 71, p. 461, n. 11; section 212, p. 574, n. 40, 45; section 280, p. 637, n. 24; section 727, p. 956, n. 86; Appeal and Error, 4CJ, section 2853, p. 876, n. 78; p. 878, n. 82.

*Edgar & Banta* for appellant.

*Abbott, Fauntleroy, Cullen & Edwards* for respondent.

NIPPER, J.—This action was brought by the Landau Grocery Company against the Bank of Potosi to recover the proceeds of certain checks drawn by various parties, payable to plaintiff, endorsed by plaintiff's traveling salesman, G. W. McMillen, and deposited by said McMillen to his credit in said bank. It is unnecessary to refer in detail to the pleadings, except to say that the answer of the bank alleged that McMillen had authority to endorse the checks; that plaintiff was estopped to deny said McMillen's authority, and that

the checks were paid by McMillen by his personal remittances to plaintiff.

The evidence discloses that McMillen was a traveling salesman for the plaintiff wholesale grocery company, and that it was his duty to sell goods and to collect therefor from his customers. He had certain territory in southeast Missouri, consisting of four or five counties. He would sometimes be paid in cash by his customers, sometimes they would pay him by turning over to him certain checks given to them, or in some instances they would pay him with their personal checks drawn in favor of the plaintiff. McMillen would sometimes send these checks direct to the house, or in some instances would endorse the name of plaintiff on said checks, write his own name under such endorsement, and deposit them in the defendant bank to his own credit and in his own personal account. He would then remit to the company the amount due by sending his personal check drawn on his own account.

The plaintiff's evidence tended to show that no authority either express or implied, was given McMillen to endorse these checks, which were made payable to the plaintiff, and deposit them in his own personal account. Plaintiff's evidence was also to the effect that it had no knowledge that such was being done.

At the time this suit was instituted McMillen was no longer in the employ of the plaintiff company. He was a witness for defendant and testified that he had authority to so endorse these checks and to make the remittances in the manner in which he did, and that the company had full knowledge of this method of transacting its business, and expressly approved such method of making remittances.

The testimony of the cashier of the defendant bank shows that this had been a habit and custom of McMillen's for a long time, and that no complaint of any kind had ever been made by the company until shortly before this suit was filed. The cashier of the bank, however, testified that such bank had no express authority from the plaintiff to deposit the proceeds of checks thus drawn, to McMillen's credit, and he also stated that he had no personal knowledge that the plaintiff company knew of such acts and conduct on the part of McMillen.

The case was tried to the court without a jury. Judgment was rendered for plaintiff and defendant has appealed.

Of course, if the evidence of McMillen be true he had authority to cash these checks and make the remittances in the manner in which he did. If the evidence of plaintiff be true he had no such authority. If he had such authority the bank had no knowledge of it except the mere acquiescence of the plaintiff in McMillen's conduct, if there was such acquiescence on plaintiff's part. In our opinion, it is unnecessary to refer to the evidence in detail. This states the salient

facts, or as much as we deem necessary to a proper determination of this case.

The general rule, as applied in cases of this character, is that authority to endorse commercial paper can only be implied where the agent is unable to perform the duties of his agency without the exercise of such authority, or where the power is a manifestly necessary and customary incident of the authority bestowed upon the agent. [Pluto Powder Co. v. Cuba City State Bank, 153 Wis. 324; Jackson v. National Bank, 92 Tenn. 154.]

There has been some distinction made between apparent authority and authority which operates by way of estoppel, and courts and text-writers often confuse implied and apparent authority with agency or authority by estoppel. Apparent authority is not founded in negligence of the principal but in the conscious permission of acts beyond the power granted, whereas the rule of estoppel has its basis in the negligence of the principal in failing properly to supervise and control the affairs of the agent. It is conceded in this case that McMillen had express authority to sell goods and collect from his customers. However, there is no implied authority from this state of facts to endorse checks made payable to his principal. If it had been necessary for McMillen, in the exercise of his duties as agent, in selling goods and collecting therefor, to endorse such checks, then the implied authority to endorse such checks would be presumed because it would be necessary for him to perform these functions in order to carry out the express authority conferred upon him. However, no authority will be implied from express authority. [Guaranty Trust Co. v. Manhattan Co., 183 App. Div. 586, 170 N. Y. Supp. 81.]

In cases of this kind the clearest kind of proof should be required showing the scope and purpose of the agency. It is a well-established principle of law that an agent authorized to make collections has no implied authority to endorse checks in the name of the principal. [Kansas City Casualty Co. v. Westport Avenue Bank, 191 Mo. App. 287, 177 S. W. 1092.]

There is the case of Chamberlin Metal Weatherstrip Co. v. Bank of Pleasonton, 107 Kan. 79, in which an agent with authority to collect has been held to have authority to endorse paper payable to his principal. However, the facts in that case are distinguishable from the one before us.

There is evidence, if plaintiff's story be true, that the plaintiff had no knowledge of the fact that McMillen was endorsing checks made payable to it and depositing them in his own personal account.

Now as to the question of estoppel, in the absence of false representations by the party sought to be estopped, he must have been guilty of such conduct as to leave the person pleading the estoppel to have reasonable cause to believe that the agent had authority from

his principal to receive the money therefor and place it to his own individual credit, and withdraw it by his personal check for any purpose he may desire and for his private use. If there is any substantial evidence that the plaintiff had knowledge of these dealings between McMillen and the defendant, either express or implied, and by its conduct and silence led the defendant, in the exercise of reasonable care and judgment, to believe that McMillen had that authority and acted on it to its detriment, then plaintiff would be estopped. [Oklahoma State Bank v. Gallion Iron Works & Mfg. Co., 4 Fed. (2d) 337.] However, in this case the court found the facts against defendant's contention and this finding has the force and effect of the verdict of a jury. It cannot be said that there is no substantial evidence to support these findings, and, therefore, we would be without authority to interfere.

The judgment is accordingly affirmed. *Haid, P. J.*, and *Becker, J.*, concur.