L. W. Cox & Co., Inc., Plaintiff, *v.* Chemical Bank and Trust Company, Defendant, and J. Frank Martin, Impleaded Defendant.

City Court of New York, Trial Term, New York County, February 14, 1941.

*A. A. Burger* [*Hyman J. Fliegel* of counsel], for the plaintiff.

*Shearman & Sterling* [*Lester Kissel* of counsel], for the defendant.

*Hardin, Hess & Eder* [*Harold B. Elgar* of counsel], for the impleaded defendant.

COLEMAN, J.   The plaintiff, a corporation, brings this action in conversion against a bank to recover the proceeds of three checks in which it was the named payee, but which, it says, were transferred by its president, Cox, without authority to its vice-president, Martin, who in turn deposited them with the defendant and received the proceeds.   The bank impleaded its depositor, Martin (Civ. Prac. Act, § 193, subd. 2).

The checks, totaling $2,984.83, were transferred by Cox in payment of an alleged debt of the corporation to Martin.   The plaintiff concedes that it owed Martin $2,000; it denies that any more was due, and since no one check by itself or in combination with any other equals $2,000, it asserts that all three checks were converted and that it is entitled to recover the full amount.   The bank's position is that the full amount was due and that in any case Cox, either generally by virtue of his office as president or specifically by authority of the by-laws and certain resolutions of the corporation, had power to dispose of the checks in the manner he did, and that if he improperly diverted corporate funds he was abusing his powers, for the consequences of which the bank, innocent of any impropriety, is not responsible.   No other contention is presented or defense raised.

The checks were received by the plaintiff from cargo underwriters for certain marine losses and were turned over by Cox to Martin, Cox indorsing them " Pay to the order of J. Frank Martin " and stamping the name of the corporation.   No signature was placed after the name of the corporation.

As to the amount of the corporation's indebtedness to Martin, I am satisfied that it did not exceed $2,000.   There was no agreement to pay him for his services in adjusting the cargo damage claims, and there was no agreement to pay him interest on any of his loans to the corporation.   Martin's contentions as to these seem to be no more than belated and labored attempts to bring the total amount of the claimed debt to the total amount of the checks.

On the question of conversion, the bank converted the three checks and is liable to the plaintiff to the extent indicated below.

1. Cox was without power to indorse the checks and the bank, in accepting them, was dealing with property of the corporation. The consequences are those that follow where an indorsement has been forged — that is, property stolen, and in such a case, of

course, the bank would be liable. (*Standard Steam Specialty Co.* v. *Corn Exchange Bank*, 220 N. Y. 478.) Whatever may otherwise be the power of a president of a corporation over commercial paper (cf. *Wen Kroy Realty Co.* v. *Public Nat. Bank & Trust Co.*, 260 N. Y. 84, 88), here the powers of Cox were severely circumscribed. The treasurer alone had control over the funds of the corporation, and he alone had the power to indorse commercial paper. The president could sign checks only in conjunction with another officer. It is plain that he was given no power by himself to dispose of the corporation's funds.

The bank urges that a resolution filed by the plaintiff with the National City Bank, the corporation's only depository, conferred power upon the president to indorse. But that resolution, by its terms, related to the corporation's own account in that bank and in no way extended the power of any officer. Similarly the resolution authorizing the deposit of funds with the National City Bank did not have any effect upon the powers of the officers. Each of the officers, including the president, was " authorized to deposit all checks " of the corporation with the depository. But, as the court pointed out in the *Standard Steam Specialty Co.* case (*supra*, p. 482), " the right to indorse was a mere incident to the authority to deposit." A *pro forma* power to indorse for the purpose of making a deposit by itself, is no power at all so far as strangers are concerned. At best, Cox had power only to make a restrictive indorsement to enable the National City Bank to collect the proceeds of the checks in behalf of the corporation. He had no other power and " any person taking checks payable to a corporation, which can act only by agent, does so at his peril and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent (*People* v. *Bank of North America*, 75 N. Y. 547), or is otherwise precluded by its conduct from setting up such lack of authority in the agent as in *Phillips* v. *Mercantile National Bank of N. Y.* (140 N. Y. 556)." (*Standard Steam Specialty Co.* v. *Corn Exchange Bank, supra*, p. 481.) Here, as we have said, there is no such contention or defense.

*McCabe Hanger Manufacturing Co.* v. *Chelsea Exchange Bank* (183 App. Div. 441) is not a ruling to the contrary. There the court found as a fact that the officer who diverted a corporate check to his own purposes had the power to indorse checks in the name of the corporation, without restriction and without qualification. The record on appeal in that case shows that the stamp used there for indorsement contained no restriction, such as " for deposit," or the name of the bank, but only the corporate name. True, after indorsement it was the officer's duty to deposit the

checks in the corporation's depository. This he failed to do, but on his failure to do what his duty to his corporation required him to do and what it was assumed he would do, it was the corporation which suffered the consequences. The case is the very one supposed by Judge POUND in the *Standard Steam Specialty* case (p. 481) where he stated, that if the clerk there had been given authority to indorse checks in blank " with the intention that the checks when so endorsed might be used for a specific purpose only," such as deposit in the corporation's depository, the indorsement would bind the corporation. There, as we have seen, the power to indorse was restricted; here Cox had no power at all.

2. Even if Cox had power to indorse checks generally, the corporation taking the consequences of his abuse of that power, he did not attempt to exercise it and the bank cannot be said to have relied upon it. (*Wen Kroy Realty Co.* v. *Public Nat. Bank & Trust Co., supra.*) The indorsements were merely by way of a rubber stamp of the corporate name without any written signature, authorized or unauthorized, and without any designation of an officer. This " *pro forma* " indorsement would have been altogether appropriate for a deposit in the plaintiff's bank whether placed there by the president or by a clerk delivering the checks to the bank for deposit. It gave not even a hint to the defendant bank that the person who placed the stamp on the check was the president of the corporation, or that it was the president who transferred it to Martin, or that he had the power to transfer it. In the *Wen Kroy* case (*supra*) the court assumed *arguendo* that the president of the plaintiff corporation had " actual or apparent authority " to indorse. Yet because the president who actually indorsed as president, had his son also indorse as secretary, when in fact the son was not secretary, the court held that there was no representation by the president that he alone had power to indorse, and so " no reliance by the bank upon the existence of such power " (p. 93). A rubber stamp indorsement of a corporation without any signature is even less representation of power and the exercise of power.

3. It is unnecessary to consider the question of the bank's good faith or want of notice of any diversion of funds as the checks were indorsed without any authority. (Neg. Inst. Law, § 95; *Wen Kroy Realty Co.* v. *Public Nat. Bank & Trust Co., supra*, p. 93.)

4. As to the amount of recovery, the plaintiff upon the oral argument conceded that the bank should be credited with the amount concededly due Martin, leaving a balance of $984.83. In its brief it takes the position that each check must be considered in its entirety, and that since no one check or no combination is

for the exact amount of the indebtedness, all three checks were converted and the bank is liable for the full amount. But its original position is the sound one. There may have been conversion in the technical sense but to the extent that a creditor of the plaintiff was paid, to that extent the plaintiff was benefited and upon equitable grounds it cannot recover from the bank. (*Levy Fabrics, Inc.*, v. *Shapiro Bros. Factors Corp.*, 259 App. Div. 463; *Yanowe & Co., Inc.*, v. *Am. Exchange Irving Trust Co.*, 226 id. 530.) In the latter case not only the entire proceeds of certain checks but part of the proceeds of another were ultimately applied to the use of the plaintiff; and although the defendant bank was held to have converted the checks, it was nevertheless given credit for the payments, thus reducing its liabilities.

5. There will be judgment for the plaintiff against the bank for $984.83, with interest, and, Martin admitting his liability over if the bank is responsible to the plaintiff, there will be judgment over in favor of the bank against Martin for a like amount.