BREDE DECORATING, INC., Respondent,

v.

JEFFERSON BANK AND TRUST COM-
PANY, a corporation, Appellant.

No. 48197.

Supreme Court of Missouri,

Division No. 2.

April 10, 1961.

Herbert E. Barnard, Henry C. Bryan, Jr., James E. McDaniel, McDonald, Barnard, Wright & Timm, John W. Mueller, St. Louis, for Jefferson Bank and Trust Co., defendant-appellant.

Robert S. Allen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for respondent.

EAGER, Judge.

This is a suit for the conversion of sixteen checks in the aggregate amount of $18,359.80. After a verdict for the defendant, the trial court entered judgment for plaintiff pursuant to its after-trial motions and, in the alternative, sustained its motion for a new trial. On this appeal defendant asks that the original verdict and judgment be reinstated or, in the alternative, that it have a new trial.

Plaintiff, Brede Decorating, Inc., a Missouri corporation, was engaged in the "convention decorating business"; this, as we understand, involved the furnishing of decorations, booths, etc. for semi-public events, such as homes shows, conventions and commercial displays, and also street decorations for the Christmas season. We may occasionally refer to the corporate plaintiff as "Brede." Prior to January 1952, it had operated as a partnership; in that month it was incorporated. Its officers were William S. Brede, President; John L. Reibold, Vice-President; M. M. Curtis, Secretary, and James W. Egan, Treasurer. Its office was in the City of St. Louis and Egan was in charge of the business as its general manager. The other officers all lived in Minnesota where they operated another corporation with a similar name and business. Egan was supposed to make reports to Brede at least monthly, with the assistance of an outside accountant, but apparently these were not always made. Each of the officers owned a one-fourth stock interest. During the period involved here Richard J. Siviur was connected with the St. Louis operation, first as an employee and later as a salesman on commission; his status at certain times appears to have been somewhat hazy. Some of his actions are specifically involved in the issues here. In January 1952, Egan opened an account for the corporation at defendant bank, Brede's office being located nearby. At that time he furnished a signature card, with the signatures of all four officers listed thereon, and a corporate resolution or certificate of authority which will be recited in some detail later. No subsequent change was made in the card or the resolution. This corporate bank account remained active until September or October 1953, when the last entry was made and all money withdrawn. At about that time the Brede office was moved and a new corporate account was opened at The Plaza Bank, the location of which was apparently more convenient. Defendant was never given any specific notice of the closing of the corporate account or of any revocation of Egan's authority as an officer. Under Brede's resolution, he had authority to draw checks and, to a controversial extent, to endorse. Some corporate checks had been deposited to Brede's account at defendant bank, bearing simply a rubber stamp of the corporate name on the back, i. e., "Brede Decorating, Inc."; Egan testified that such a stamp was used regularly for deposits, but that all checks were deposited and none cashed. When the account was opened at The Plaza Bank, a new stamp was procured constituting a restrictive endorsement for deposit only to the corporate account. In November 1954, (more than a year after the corporate account was changed), a new account was opened at defendant bank by Egan and Siviur under the fictitious name of "Acme Williams Decorating Co."; this continued until December 1955, when all funds had been withdrawn. Withdrawals from that account required the signatures of both Egan and Siviur. While there is some discussion as to whether this was actually a

partnership or not, it makes little difference here, for it certainly was a personal account of Egan and Siviur. Acme-Williams had no office, no books or records except a check book, no business cards, and no employees. Its address was listed at the bank as Siviur's apartment. In October 1955, Egan and Siviur terminated all connection with plaintiff. As shown on Egan's reports, the company had been operating at a substantial loss, and had borrowed approximately $18,000 at Egan's suggestion. When he resigned in October 1955, the other three officers bought his stock for a consideration of $12,500. In the general disarrangement of affairs, Siviur simply left, unheralded and more or less unnoticed.

During the period from January 6, 1955, to October 20, 1955, sixteen checks payable to Brede Decorating, Inc., were deposited in defendant bank to the credit of the Acme-Williams Decorating Company account. Substantially all of these, when presented, bore on their backs the rubber stamped name "Brede Decorating, Inc." and below this the words "Acme-Williams Dec Co" (or some slight variation) written or printed in ink; none bore any individual's name or signature. Two bore only the Brede stamp; on one the Acme-Williams name was apparently typed with a restriction for deposit in that account. It is for these sixteen checks that plaintiff seeks to hold defendant. At least ten of the checks, including most of the larger ones, were issued in payment of invoices sent out to customers on the regular Brede invoice form. Egan and Siviur testified by deposition; neither of them recalled or explained a number of these checks; they testified that a few, including four checks on two large jobs, were for transactions which Siviur had "sold," promoted and handled personally, reimbursing Brede for any materials or labor it furnished. We find it unnecessary to go into the details of this. Egan identified his writing appearing in the Acme-Williams name on only one of the sixteen checks, and he testified that he made out that deposit slip; Siviur more or less

identified his writing of the Acme-Williams name on various others. Neither testified by whom the Brede rubber stamp had been affixed on any check. It was not specifically shown who actually made any deposit; Siviur testified that he generally made the deposits. He also testified that he "discussed" virtually all of the checks with Egan; to what purpose and with what result is not shown. It was shown that four checks totaling $3,102.24 were drawn on the Acme-Williams account from January to July 1955, payable to Brede, and that these were deposited in Brede's Plaza account. In entering judgment for $15,257.45 (exclusive of interest) the trial court offset the total of these four checks against the total of the sixteen alleged to have been converted. Prior to the purchase of Egan's stock, Brede sent a certified public accountant to St. Louis to check the books and records; he worked with Egan and made a report, but it is not specifically shown that there were available to him any records which would have indicated the handling of these sixteen checks, or the payment of those accounts. Beginning early in 1956, Brede discovered the misapplication of these checks, which, of course, was after Egan left the company. It is clear that no officer of plaintiff, except Egan, knew at any time that checks payable to Brede were being deposited in any other account.

While we do not attach much legal significance to any individual views affecting defendant's liability, we note that Mr. Poertner, Vice-President of defendant, testified that it was "unusual" to accept a corporate check for deposit in another account, and that, if cash had been requested, an individual signature would have been required. He also thought, however, that these endorsements might be sufficient for negotiation, especially if the bank knew the individual. Defendant did not question the handling of these checks at any time, and it made no inquiry concerning the matter. The bank's officers did not know Siviur and did not rely on any presumed authority which he might have had.

We have reserved any discussion of the pleadings until the basic facts were stated. The petition, in essence, alleged that defendant had credited plaintiff's checks (setting them out) to the Acme-Williams account of plaintiff's employees without proper endorsement, and had permitted the proceeds to be withdrawn and misappropriated; and that, by reason of such acts of asserted dominion and wrongful control without authority, plaintiff had lost the amount of such checks, defendant had collected the checks, and that it was guilty of conversion. The answer, after sundry denials, alleged (with somewhat more elaboration) that Egan had authority to sign and endorse checks and other negotiable instruments and that defendant had been authorized to pay checks when signed or endorsed by him, without inquiry; and that plaintiff was estopped. Such further facts as may be necessary will be referred to in the course of the opinion.

No question has been raised here concerning the form of this action. Many cases of this general nature have been sustained as actions for conversion, while others have been sustained as actions for money had and received. In this opinion, we shall not attempt to follow the points and subpoints of the parties, as such. In substance, they argue pro and con the supposed authority of Egan, acting personally or through Siviur, to do what was done; this, from the varying standpoints of actual authority, implied authority, apparent authority and estoppel. Defendant suggests here that it was entitled to a directed verdict. We note at the outset that the Uniform Fiduciaries Law was enacted in Missouri in 1959, Section 456.240 et seq. RSMo 1959, V.A.M.S., long after these occurrences took place. These statutes have not been mentioned by the parties, since the act is not applicable here. The reason we call attention to it is that it might well have an impact upon such cases as this in the future; at least, it would be necessary to consider it.

We shall first consider the matter as though Egan personally had placed the stamp and the writings on the backs of these sixteen checks. The certificate of authority furnished to defendant, and purporting to be a copy of a corporate resolution, was, in its essential parts, as follows: "that all checks, notes and other instruments for the payment of money made or drawn by, or upon or payable to the corporation, shall be signed or accepted, or endorsed (other than for deposit) by One of the following officers of the corporation and in the manner stated: President Vice President Secretary Treasurer and the said bank is hereby authorized to pay such checks, notes and other instruments for the payment of money, and also to receive the same for deposit to the credit of, or in payment from any holder (including checks drawn to cash or bearer, or to the individual order of the officer signing the same) when so signed or accepted, or endorsed, without inquiry of any kind, whether payable to or tendered for deposit to the credit of, or in payment of the obligation of any officer of the corporation, or otherwise."

 Ignoring the resolution for the moment, we hold first that Egan had no implied authority to endorse corporate checks for deposit in any other account. Such action was not in any way necessary to the business entrusted to him; that is a requirement for implied authority. Landau Grocery Co. v. Bank of Potosi, 223 Mo.App. 1181, 26 S.W.2d 794, 795; Trice v. Lancaster, Mo.App., 270 S.W.2d 519; Kansas City Casualty Co. v. Westport Avenue Bank, 191 Mo.App. 287, 177 S.W. 1092; Good Roads Machinery Co. v. Broadway Bank, Mo.App., 267 S.W. 40; Independent Oil Men's Ass'n v. Ft. Dearborn National Bank, 311 Ill. 278, 142 N.E. 458; Atlantic Trust Co. v. Subscribers to Automobile Ins. Exchange, 150 Md. 470, 133 A. 319. Clearly Egan would have had implied authority to endorse for deposit in the corporate account, as that was essential to the business and also the customary manner of han-

dling. It is, however, neither customary nor necessary to endorse such checks for negotiation, and that is recognized as a highly unusual procedure.

The existence of apparent authority in Egan depends upon whether or not the corporation had "held him out" as authorized to do what was done, by its own conscious participation, and so as to mislead third persons. Atlantic Trust Co. v. Subscribers to Automobile Ins. Exchange, 150 Md. 470, 133 A. 319, 321; Landau Grocery Co. v. Bank of Potosi, supra; Good Roads Machinery Co. v. Broadway Bank, supra. The record fails to show that Egan had ever, prior to this series of checks, endorsed any check payable to the corporation for any purpose other than a deposit to its account. In fact, he substantially admitted that he had not. We consider also the fact that the corporate account in defendant bank had been wholly inactive for more than a year when these transactions started, if indeed not actually closed; that fact would certainly detract from any claimed existence of apparent authority in Egan. We have considered the following cases, and others, cited by defendant: Gate City Building & Loan Ass'n v. National Bank of Commerce, 126 Mo. 82, 28 S.W. 633, 27 L.R.A. 401; New York Indemnity Co. v. Andrew County Bank, 227 Mo.App. 878, 59 S.W.2d 741; Wedge Mines Co. v. Denver National Bank, 19 Colo.App. 182, 73 P. 873; McCabe Hanger Mfg. Co: v. Chelsea Exchange Bank, 183 App.Div. 441, 170 N.Y.S. 759. In Gate City, there had previously existed an extensive practice of mixing the corporate checks and account with the personal account of the officer involved, apparently to the knowledge of other officers. In New York Indemnity, the agent had authority to endorse and negotiate checks for the purpose of procuring drafts, but endorsed and cashed the checks in question; and, if material, the defendant was told by the drawer of the checks that the agent was authorized to get the cash; the court regarded the endorsements in question as authorized, but coupled with a subsequent breach of faith and diversion. The court also noted there, as a distinction, that the agent was not depositing the checks to his own account, distinguishing Wagner Trading Co. v. Battery Park National Bank, 228 N.Y. 37, 126 N.E. 347, 9 A.L.R. 340, on that basis. In Wedge, there had apparently been a course of dealing which was sufficient to mislead the defendant bank. In McCabe, the opinion proceeded on the theory of a valid endorsement and a subsequent diversion. That was not a decision of the court of last resort of New York, and there is no assurance that it correctly represents the New York law, especially when contrasted with cases such as Wagner, supra. It may be doubted whether there is any legitimate place for a claim of apparent authority when a bank has in its files a corporate resolution fixing the extent of the actual authority of its officers and agents. See, generally, Mechanics' Bank v. Schaumburg, 38 Mo. 228; Hodkinson v. McNeal Machinery Co., 161 Mo.App. 87, 142 S.W. 457. We hold, under all the circumstances here, that there was no apparent authority in Egan to transfer these checks in the manner and for the purpose shown. The acts involved a clear diversion of corporate funds, which no officer, prima facie, may legally accomplish.

■ No cases have been cited which are of much help in construing the corporate certificate or resolution involved here. This resolution leaves much to be desired from the standpoint of clarity. It was admittedly prepared by the bank or its attorneys for its own protection and it must be construed against the bank in case of doubt as to its meaning, at least where other means of construction fail. Leathers v. Metalcraft Mfg. & Sales Corp., Mo.App., 240 S.W.2d 211; Engel v. Cord Moving & Storage Co., Mo.App., 313 S.W.2d 173. See also, Fidelity & Deposit Co. of Maryland v. Marion National Bank, 116 Ind.App. 453, 64 N.E.2d 583, as an example of such a construction. To express the thought otherwise, the requirements of the resolution

must be strictly complied with. By this resolution, certain authority was given to any one of four officers, including Egan. The key words, so far as we are concerned here, are: "checks * * * made * * by, or payable to the corporation, shall be signed or accepted or endorsed (other than for deposit) by one of the following * * * and the * * * bank is authorized to pay * * * and * * * to receive the same for deposit to the credit of * * * any holder * * * when so signed or accepted or endorsed. * * * whether * * * tendered for deposit to the credit of * * * any officer * * *." We first dispose of the words "other than for deposit" appearing in parentheses; this phrase, taken in its context, clearly refers to checks, etc., presented for a purpose other than for *deposit in the corporate account*; if this were not true, some of the following provisions are meaningless. The very apparent meaning and effect of the resolution is to recognize and require a different method of handling for those checks and instruments which are *cashed or negotiated* than that followed for deposits to the corporate credit, and to protect the bank therein. One specific question presented here is whether or not a mere stamped endorsement of the corporate name is a sufficient endorsement for negotiation to an officer's personal credit. In the following cases, while they do not necessarily involve resolutions of this type, mere rubber stamped endorsements were held to put the defendant banks upon inquiry when checks payable to a corporation were presented for cash or negotiation. Passaic-Bergen Lumber Co. v. United States Trust Co., 110 N.J.L. 315, 164 A. 580; Richard Livingston, Inc. v. Bank of America National Trust & Savings Ass'n, Cal.App., 46 P.2d 195; L. W. Cox & Co., Inc. v. Chemical Bank & Trust Co., 175 Misc. 1063, 26 N.Y.S.2d 38. In Passaic, supra, the court said, 164 A. loc. cit. 581: "The very character of the rubber stamp impression of the plaintiff's name was sufficient evidence to put the defendant on notice and on guard, when these checks were presented for payment." In Cox, supra, the court said, 26 N.Y.S.2d loc. cit. 41–42: "Even if Cox had power to indorse checks generally, the corporation taking the consequences of his abuse of that power, he did not attempt to exercise it and the bank cannot be said to have relied upon it. Wen Kroy Realty Co. v. Public Nat. Bank & Trust Co. of New York, supra, 260 N.Y. 84, 183 N.E. 73. The indorsements were merely by way of a rubber stamp of the corporate name without any written signature, authorized or unauthorized, and without any designation of an officer. This 'pro forma' indorsement would have been altogether appropriate for a deposit in the plaintiff's bank whether placed there by the president or by a clerk delivering the checks to the bank for deposit. It gave not even a hint to the defendant bank that the person who placed the stamp on the check was the president of the corporation, or that it was the president who transferred it to Martin, or that he had the power to transfer it." Defendant cites Coal & Iron National Bank of New York v. McClatchey, 120 Misc. 178, 198 N.Y.S. 782 (an opinion of the City Court of New York) as authority for the acceptance of such a stamped endorsement. In view of other New York decisions the case is not persuasive. In American Union Trust Co. v. Never Break Range Co., 196 Mo.App. 206, 190 S.W. 1045, also cited, it appeared that the signature on a note, the name of the drawer as payee, and the endorsement, were all made with a rubber stamp by corporate officers acting with full authority, and that the endorsement was specifically ratified, upon inquiry.

█ It has also been held significant, generally, that a blank endorsement for negotiation or cash merely bears the corporate name, with no individual signature. This is said to indicate that the check, and particularly one payable *to* the corporation, is not being handled in the regular manner. Campbell Trucking Corp. v. Public National Bank & Trust Co., 201 Misc. 745, 105 N.Y.S.2d 870; Passaic-Bergen Lumber Co. v. United States Trust Co., 110 N.

J.L. 315, 164 A. 580; L. W. Cox & Co. v. Chemical Bank & Trust Co., 175 Misc. 1063, 26 N.Y.S.2d 38. As already indicated, the cashing or crediting to an individual account of a check payable *to* a corporation, is considered a highly suspicious circumstance,—more so than a similar handling of a check drawn *by* the corporation. Wagner Trading Co. v. Battery Park National Bank, 228 N.Y. 37, 126 N.E. 347, 9 A.L.R. 340; Campbell Trucking Corp. v. Public National Bank & Trust Co., supra; Standard Steam Specialty Co. v. Corn Exchange Bank, 220 N.Y. 478, 116 N.E. 386, L.R.A. 1918B, 575; Good Roads Machinery Co. v. Broadway Bank, Mo.App., 267 S.W. 40. We conclude here, that under the accepted constructions of the terms used (as, for instance, "endorsed"), the corporate resolution required Egan's signature for the negotiation to the Acme-Williams account of checks payable to the corporation, or at the very least, a designation of his name as the party making the endorsement. The stamp of the corporate name most certainly did not prove itself as the endorsement of an authorized officer for negotiation. Mayers v. McRimmon, 140 N.C. 640, 53 S.E. 447, cited by defendant; L. W. Cox & Co. v. Chemical Bank & Trust Co., 175 Misc. 1063, 26 N.Y.S.2d 38. Egan only identified his writing on the back of one check and it was not specifically shown that he presented that check, or any other, to the bank. And, indeed, it was not shown that he ever distinctly authorized the stamping of the corporate name on any of these checks, or its presentation for personal credit. Even assuming that Egan could perform, as suggested, ministerial or mechanical acts of his agency through Siviur or someone else (Northwestern Savings Bank v. International Bank, 90 Mo.App. 205; Mechem Outlines of Agency, Fourth Ed., Section 82; Mercantile Trust Co. v. Paulding Stave Co., Mo.App., 210 S.W. 438), it has not been shown that he did so. This argument has been made, but the inference here is too tenuous. For this reason, as well as others,

there was a material deficiency in the proof of the bank's affirmative plea of authority.

■ All the evidence here points to the ultimate fact that the bank was legally put upon inquiry to determine whether the corporation had authorized these acts. In so holding we consider: the nature of the stamped endorsement, with no signature and no personal designation; the fact that most or all of the checks were presented by someone not even remotely authorized to endorse; the fact that when these highly unusual transactions began the corporate account had been wholly inactive, with no money on deposit, for more than a year, if indeed not actually closed; the fact that this was not merely a single isolated occurrence but a series of transactions covering a period of about nine months (Niagara Woolen Co. v. Pacific Bank, 141 App.Div. 265, 126 N.Y.S. 890); the fact that such a transfer of corporate funds had never been made, by Egan or anyone else, while the account was active; the fact that these were checks payable *to* the corporation, and would therefore not be returned to it for its files and records; the fact that the bank had in its files the corporate resolution and the signature card showing the signatures of all authorized officers; and the fact that a diversion of corporate funds to a private account is, on its face, a highly suspicious circumstance, and that the authority to do this should be clear. The following cases constitute authority to the effect that the bank was put on inquiry. Wagner Trading Co. v. Battery Park National Bank, 228 N.Y. 37, 126 N.E. 347, 9 A.L.R. 340; Niagara Woolen Co. v. Pacific Bank, 141 App.Div. 265, 126 N.Y.S. 890; Singer Sewing Machine Co. v. Citizens' National Bank & Trust Co., 111 N.J.L. 199, 168 A. 32; Campbell Trucking Corp. v. Public National Bank & Trust Co., 201 Misc. 745, 105 N.Y.S.2d 870; Passaic-Bergen Lumber Co. v. United States Trust Co., 110 N.J.L. 315, 164 A. 580; Good Roads Machinery Co. v. Broadway Bank, Mo.App., 267 S.W. 40; Kansas

City Casualty Co. v. Westport Avenue Bank, 191 Mo.App. 287, 177 S.W. 1092. The factual differences in these cases do not obviate the applicability of the principle. Defendant insists that the Missouri cases do not recognize the necessity of inquiry under these circumstances, supposedly following a "minority" rule; it cites Gate City Building & Loan Ass'n v. National Bank of Commerce, 126 Mo. 82, 28 S.W. 633, 27 L.R.A. 401; McCullam v. Third National Bank, 209 Mo.App. 266, 237 S.W. 1051; New York Indemnity Co. v. Andrew County Bank, 227 Mo.App. 878, 59 S.W.2d 741, and United States Fidelity & Guaranty Co. v. Mississippi Valley Trust Co., Mo.App., 153 S.W.2d 752. We do not construe these cases as establishing a rule exonerating a bank under the circumstances present here, or releasing it from the necessity of inquiry. The facts in all those cases differ materially from ours. We have already mentioned distinctions concerning the Gate City case and the New York Indemnity case. In McCullam, the checks were drawn *on* the corporate account, and the officer had repeatedly been permitted to deposit such checks to his own account and to intermingle the two accounts, using his personal account in part for corporate purposes; the court said, 237 S.W. loc. cit. 1055: "Indeed, circumstances may attend the shifting of corporate funds to the officer's personal account which would afford adequate notice to the bank to reasonably support the inference that a misappropriation was intended." In Mississippi Valley, supra, the account of a guardian was involved and the decision was chiefly concerned with technicalities of pleading; it is indicated elsewhere that the inquiry required of banks on deposits of fiduciaries such as guardians, executors and trustees is not so strict as with corporate officers and employees. Maryland Casualty Co. v. City National Bank, 6 Cir., 29 F.2d 662, certiorari denied 279 U.S. 847, 49 S.Ct. 345, 73 L.Ed. 991; Paton's Digest, Vol. II, Deposits, pps. 1746–1747, note 22C:1, citing numerous cases. And the effect of these cited cases, whatever it might otherwise be, is destroyed here by the existence of the corporate resolution. We have construed this as giving *no* authority to Egan (even if he personally did so) to endorse corporate checks for negotiation in the manner attempted here, i. e., by rubber stamp with no personal signature or identification. It is apparent that defendant's counsel fail, in some instances, to distinguish between the method and authority required to endorse a corporate check for negotiation, and merely to endorse it for deposit.

■ Defendant claims that it is entitled, in this suit, to the benefit of any defensive facts which inquiry would have developed, citing Buckley v. Lincoln Trust Co., 72 Misc. 218, 131 N.Y.S. 105, and Wilson v. Metropolitan Elevated Ry. Co., 120 N.Y. 145, 24 N.E. 384. It further insists that inquiry would naturally have been made of Egan who was the sole officer of Brede located in Missouri, and who was listed in the resolution; and, that such inquiry would have disclosed that the "endorsements were those of Egan." The matter is not so simply disposed of; a reasonable inquiry would not have been limited to an inquiry from the officer or agent whose very acts were suspect. An agent's authority is not to be determined from his own assertions. Any reasonable inquiry here should have been directed to one or more other officers or directors, particularly in view of the total inactivity of the account for more than a year; this would have disclosed that these transactions were diversions of corporate funds and unauthorized.

A few of the cases cited by defendant exonerate the bank involved on the theory that the agent had authority to endorse, though for a restricted and limited purpose, and that by his endorsement title passed, even for a different and broader purpose. These cases apparently adopt the theory that the deposit to a personal account or

the cashing of the check, though taking place contemporaneously with its presentation, was a *subequent* act and a mere breach of faith for which the corporate principal must suffer. While, generally speaking, this appears to be a rather narrow and technical view, it is not necessary to approve or disapprove of those rulings here and now. We have already held that the resolution in defendant's hands did not authorize an endorsement for negotiation in the manner and of the type attempted here; that ends the matter so far as this case is concerned.

■ Estoppel is pleaded by defendant, but our discussion of the subject of apparent authority really disposes of this question also. See, however: Atlantic Trust Co. v. Subscribers to Automobile Ins. Exchange, 150 Md. 470, 133 A. 319; Kansas City Casualty Co. v. Westport Avenue Bank, 191 Mo.App. 287, 177 S.W. 1092; Austin-Western Road Machinery Co. v. Commercial State Bank, Mo.App., 255 S.W. 585. Under the facts here, there was no estoppel.

■ Defendant makes the further point that plaintiff did not establish "ownership" of the checks, and that the court was thereby precluded from entering a judgment for plaintiff after verdict. It is true that there was oral evidence that Siviur had personally "sold" and furnished a major part of the services for which some of these checks were issued, that he had discussed one of these jobs with Brede's officers in Minneapolis, and that he, in effect, was entitled to the proceeds of certain of the checks (some were not explained at all). It is also true that a plaintiff in conversion must show possession or the right to possession (Major v. Berg, Mo.App., 95 S.W.2d 861), or an ownership which carries with it the right to immediate possession. State ex rel. Lipic v. Flynn, 358 Mo. 429, 215 S.W.2d 446, 451. Ownership, as such, is not necessarily an issue. The fallacy in defendant's argument about "ownership" is that we are not dealing here with the ultimate right to the money payable on the accounts for which those checks were written, or even with the right to the ultimate proceeds of the checks. We are dealing solely with a suit for the conversion of the checks, negotiable instruments payable on their very faces to plaintiff. It is presumed that the payee of a check is its owner. Singer Sewing Machine Co. v. Citizens' National Bank, 111 N.J.L. 199, 168 A. 32. Much of the very purpose of our Negotiable Instruments Act (Section 401.001 et seq. RSMo 1959, V.A.M.S.) would be perverted if we should permit a payee's ownership of the instrument to be contested by extraneous evidence of a claim to the proceeds. It is said that, " * * * 'The validity of the check, the scope of the order to pay and the person authorized by the drawer to receive payment are fixed at the inception of the instrument. * * *.' Swift & Co. Inc. v. Bankers Trust Co., 280 N.Y. 135, 19 N.E.2d 992, 997." Prugh, Combest & Land, Inc. v. Linwood State Bank, Mo. App., 241 S.W.2d 83, loc. cit. 90. There may be a question as to whether the defendant bank is entitled to raise this defense, either generally or on the pleadings here, but on the merits we conclude that the testimony of Egan and Siviur (granting that the credibility of oral testimony is for the jury) raised no material issue in this case. And the damages for the conversion of a promissory note, bond or other negotiable instrument is prima facie its face value. Pierce v. National Bank of Commerce in St. Louis, 8 Cir., 13 F.2d 40, certiorari denied 273 U.S. 730, 47 S.Ct. 240, 71 L.Ed. 863.

Plaintiff says that defendant had the burden of sustaining its affirmative defense of authority to so endorse the checks, that it did not make a submissible issue thereon, and that plaintiff was entitled to a directed verdict. Independent Oil Men's Ass'n v. Ft. Dearborn National Bank, 311 Ill. 278, 142 N.E. 458; Napoleon Hill Cotton Co. v. Stix, Baer & Fuller Dry Goods Co., 203 Mo.App. 25, 217 S.W. 323; Passaic-Bergen

Lumber Co. v. United States Trust Co., 110 N.J.L. 315, 164 A. 580; Atlantic Trust Co. v. Subscribers to Automobile Ins. Exchange, 150 Md. 470, 133 A. 319. Defendant does not contest this assertion concerning the burden, and we assume it to be true. No material issue here depends upon the credibility of oral testimony. The material facts were shown by documents or were conceded, as we have construed the evidence; and defendant failed to adduce any substantial evidence to prove the authority pleaded. In fact, all the evidence shows a lack of authority. In analogous circumstances verdicts have been directed for the plaintiff. Passaic-Bergen Lumber Co., supra; Independent Oil Men's Ass'n, supra. And see, also Atlantic Trust Co., supra, where the ruling was substantially that. We conclude that the court was correct in entering judgment for plaintiff.

One point remains, however, for which the judgment must be modified. The court allowed interest at 6% on $13,790.95 from February 28, 1958 (considered as the date of demand), and on $1,466.50 from September 11, 1959. Our § 537.520, RSMo 1949, V.A.M.S. (and RSMo 1959) applicable to actions in conversion, provides that the jury "may, if they shall think fit, give damages, in the nature of interest, * *." The allowance of interest under this statute has been held to be discretionary with the jury, and it is erroneous for the court to instruct the jury to allow interest. Jensen v. Turner Bros., Mo.App., 16 S.W.2d 742; Carson v. Smith, 133 Mo. 606, 34 S. W. 855; Simpson v. Bantley Realty Co., 142 Mo.App. 490, 126 S.W. 999. Since the court here was not sitting as the trier of the facts, it was equally erroneous for it to include interest in its judgment. This section, being a special statute, is controlling, and the general interest statute providing for the mandatory allowance of interest on contracts, accounts, etc., is inapplicable. Plaintiff cites only one case, Arthur v. Wheeler & Wilson Mfg. Co., 1882, 12 Mo. App. 335, and it is wholly inapplicable. Upon remand, the court will modify the judgment by eliminating the allowance of all interest prior to the date thereof.

As so modified, the judgment is affirmed.

All concur.